Richard H. Farley, J.
Defendant appeals from a judgment of conviction after jury trial in Justice Court, Town of Middle-town, Delaware County, convicting the defendant of driving while intoxicated in violation of subdivision 3 of section 1192 of the Vehicle and Traffic Law. Questions presented on this appeal are: (1) Was the destruction of the ampoule used as part of the breathalyzer test a violation of defendant’s constitutional rights' guaranteed by the due process clause of both the United States and New York State Constitutions? (2) Was it reversible error by the trial court to refuse to hear defendant’s motion to suppress the results of the breathalyzer test before the commencement of the trial and subsequently deny defendant’s motion during trial in the presence of the jury? (3) Should the breathalyzer test he held inadmissible as a matter of law because the breathalyzer machine had not been calibrated for more than six months prior to the test of the defendant? (4) Was the defendant denied a fair trial by the Trial Judge’s rulings, statements and his failure to marshal the evidence during the trial?
In considering the first issue, it is settled law of this State that the breathalyzer is scientifically reliable and that expert testimony upon its reliability is no longer required (People v. Donaldson, 36 A D 2d 37). This court is cognizant of the fact that some courts have ruled that the destruction of the test ampoule denies the defendant due process of law. (See Van Halen v. Municipal Ct. for the Pasadena Judicial District of Los Angeles County, 3 Cal. App. 3d 233.) However, a different California appellate court has ruled to the contrary. (People v. Noonan, 20 Cal. App. 3d 862.) While this court is of the personal opinion that the ampoule should he preserved, it is not the function of the court under the doctrine of separation of powers to legislate or to make its own rules and regulations. If such legislation is desirable, it should he passed by the Legislature or that authority delegated to the Department of Health in express terms under subdivision 5 of section 1194 of the Vehicle and Traffic Law. Furthermore, if this or any defendant questions the validity of any chemical test given for intoxication, he has the option of having a physician of his own choosing administer a chemical test in addition to the one administered at the direction of the arresting officer under subdivision 8 of section 1194 of the Vehicle and Traffic Law. The first question is therefore answered in the negative.
In answering the second question, CPL 710.40 is controlling. The pertinent sections of this law read as follows (suhd. 1):
*632 “ A motion to suppress evidence must be made after the commencement of the criminal action * * * and * * * it must be made with reasonable diligence prior to trial.” Subdivision 2 states: “ The motion may be made for the first time during trial when, owing to previous unawareness of facts constituting the basis thereof or to other factors, the defendant did not have reasonable opportunity to make the motion before trial ”.
In the instant case defense counsel had subpoenaed the breathalyzer machine and ampoule and knew or ought to have known that the breathalyzer test was the principal evidence to be introduced against the defendant. Therefore this court holds such motion was not timely made and should have been made before the Justice of the Peace prior to the trial date. However, when the trial court elected to entertain the motion during the course of trial, it did so in the presence of the jury and this was error. The trial court also failed to state on the record findings of fact essential to the determination of the motion, its conclusions of law and the reasons for its determination in accordance with CPL 710.60 (subds. 5, 6).
In answering the third issue raised by the defense, this court adopts the decision of Broome County Judge Stephen Smtk in People v. Meikrantz (77 Misc 2d 892) concerning the admission in evidence of any breath test and holds that the People must present an adequate foundation. The elements of a necessary foundation are (1) that there was compliance with any statutory requirement (see Vehicle and Traffic Law, §§ 1193-a, 1194); (2) that a specified type of breath testing device was used to analyze a breath sample arid that such device is scientifically reliable for measuring the percent of alcohol in the blood through a chemical analysis of a subject’s breath; (3) that the testing device was in proper working order; (4) that the person giving and interpreting the test was properly qualified; (5) that the chemicals used in the test (i.e., the ampoules used in a breathalyzer) were of the proper kind and mixed in the proper proportions; (6) that the test was properly conducted.
This court has studied at length the mechanical operation and principles involved in the use of the breathalyzer as described in Chemical Tests and the Law by Robert L. Donigan of the Traffic Institute of Northwestern University (2d ed.). In order, to conduct a fair test it is essential (1) that the subject be kept under observation to insure that he has had no alcoholic beverages to drink for at least 15 minutes prior to the test; (2) that the breathalyzer machine be warmed up until it reaches an *633 indicated temperature of 45 to 50 degrees centigrade; (3) that the sample chamber be flushed to insure that no air is left from previous tests; (4) that the subject blow into the machine hard enough to collect a measured volume of alveolar air; (5) that the operator wait for at least a minute and a half for the breath sample to pass through the potassium dichromate in sulphuric acid solution; (6) that the operator measure the resulting color change of the reagent with an integral photoelectric filter photometer.
An erroneous reading will be obtained from the machine if there is an error in any one of the afore-mentioned steps. Of particular importance is the fact that the potassium dichromate in sulphuric acid solution and the glass of the ampoule be held to rigid specifications. This is because the indicator of the machine relies upon the resulting color change of the solution as seen by the photometer through the glass. For instance, it was found that an erroneous reading could be obtained when the original test ampoules had printing that extended below the level of the chemicals. In order to minimize error, the new ampoules have the printed matter above the fluid level of the ampoules thus eliminating any possible interference with the passage of light through the ampoule by the printed matter. It has also been found that some of the newer ampoules when turned upside down in the use of the machine will not permit all of the fluid to return to the bottom. This will result in a much higher reading than normal because the alcohol bubbled through the chemical will be in greater relation to the quantity of chemicals involved. It is clear in this case as in every breathalyzer case that the nonexpert police officer administering the test merely follows the instructions accompanying the apparatus. They do not understand the theory behind the operation of the test (nor are they required to). In order for the People to sustain a conviction it is therefore necessary to submit additional proof by testimony, that the ampoule and the photometer are in working order. This of course may be done by random sampling of the ampoules and periodic checks of the entire machine.
In the instant case the testing officer testified that the machine had not been calibrated for more than six months and further that the machine was constantly left on at the troop barracks and never turned off. These two factors taken together raise a reasonable doubt in this court’s mind as to the reliability of that particular machine. The manufacturer’s directions as to the operation of the machine require only that it be warmed *634 up to a certain temperature for a period of at least 20 minutes before the test is administered and the trial record is devoid of any testimony as to how the constant operation of the machine over so long a period would affect its reliability particularly with respect to the photometer. By analogy in speeding cases, there is a requirement that speedometers of police vehicles be calibrated at least once every six months and it would appear that the same standard should apply to the breathalyzer machine and any similar type of evidence which is used in a criminal prosecution and may deprive a citizen of his right to operate a motor vehicle in this State. A New Jersey court has held that the machine should be tested every two months for accuracy. (State v. Lcmahan, 110 N. J. Super. 578.) Unlike legislation passed in other States such as North Carolina and California, subdivision 5 of section 1194 of the Vehicle and Traffic Law fails to expressly require that chemical test be performéd according to rules and regulations adopted by the Department of Health and this court can find no regulation of said department under Part 59 of the Administrative Bules and Begulations of the New York State Department of Health (10 NYCBB 59.5) specifying how often the machine should be calibrated and tested. But once again this is a problem for the Legislature and the Department of Health. This court holds only that under the circumstances of this case the People failed to prove that this machine was in proper working order.
The People also failed to lay an adequate foundation that the ampoules used in the breathalyzer were of the proper kind and mixed in the proper proportions. The operator of the machine testified that he knew nothing about the ampoules, how long they had been' at the barracks or anything else about them. This court takes judicial notice of the fact that the chemical solution tends to lose its strength over a period of time and is subject to chemical changes making the solution unreliable particularly if it is light struck (Donigan, Chemical Tests and the Law [2d ed.], supra). No proof was offered that there was a random sampling of a particular lot of ampoules at a particular time to show that they were optically correct or that they contained the correct chemical solution in the proper quantity. This court holds that there must be reasonable proof of the reliability of the reference solution and the accuracy of the breathalyzer itself. Such proof was totally lacking in this case.
The fourth question is answered in the negative insofar as it relates to the court’s charge. Under section 2001 of the Uniform Justice Court Act a Justice Court must follow the CPL *635 and its charge is therefore governed by CPL 300.10. Subdivision 2 relates in part as follows: ‘£ The court must also state the material legal principles applicable to the particular case, and, so far as practicable, explain the application of the law to the facts, but it need not marshal or refer to the evidence to any greater extent than is necessary for such explanation. ’ ’
It is not necessary for any court to review testimony of each and every witness and in fact a court might commit reversible error by making such a review. This court has reviewed the charge and the requests to charge on behalf of the defendant which were submitted to the jury and finds that they were adequate as a matter of law for the issues presented in this trial,
This court finds that the balance of the testimony of the arresting officers would not necessarily support a conviction beyond a reasonable doubt as a matter of law. It is therefore obvious that the jury had to place great reliance upon the results of the breathalyzer test. The Trial Judged ruling with respect to the breathalyzer machine and particularly his most damaging remarks concerning the quantity of the contents of the ampoule therefore had to have an effect upon the thinking of the jury as to the defendant’s guilt or innocence. Under these circumstances this court must reverse the conviction and dismiss the information.