[938 NE2d 989, 912 NYS2d 556]

THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v DRAGAN BOSCIC, Respondent.

Argued October 14, 2010; decided November 17, 2010

## POINTS OF COUNSEL

*James R. Farrell, District Attorney,* Monticello (*Bonnie M. Mitzner, Scott Russell* and *Meagan Galligan* of counsel), for appellant. I. County Court erred in holding that the breath result was not admissible, which resulted in a reversal of the trial court's decision. (*People v Todd,* 38 NY2d 755; *People v Corley,* 124 AD2d 390; *People v Freeland,* 68 NY2d 699; *People v Dargento,* 302 AD2d 924; *People v English,* 103 AD2d 979; *People v Mickle,* 187 Misc 2d 718; *People v Pompilio,* 137 Misc 2d 997; *People v Manino,* 147 AD2d 926; *People v Hampe,* 181 AD2d 238, 80 NY2d 930.) II. County Court improperly considered material not part of the trial court's record on appeal when reversing the trial court's decision. (*People v Hampe,* 181 AD2d 238, 80 NY2d 930; *People v English,* 103 AD2d 979; *People v Todd,* 38 NY2d 755; *Broida v Bancroft,* 103 AD2d 88; *People v Gomez,* 255 AD2d 246, 93 NY2d 873; *People ex rel. Martinez v Walters,* 99 AD2d 476, 63 NY2d 727; *People v Hoppe,* 239 AD2d 777, 91 NY2d 973.)

*Joel M. Proyect,* Parksville, for respondent. I. The trial court erred in admitting the breath test result. (*People v Todd,* 38 NY2d 755; *People v English,* 103 AD2d 979; *People v Dargento,* 302 AD2d 924; *Chiasson v New York City Dept. of Consumer Affairs,* 138 Misc 2d 394; *Peasley v State of New York,* 102 Misc 2d 982; *People v Palumbo,* 79 AD2d 518.) II. If this Court did not establish the "six-month rule" in *People v Todd* (38 NY2d 755

[1975]), it should do so now. (*People v English*, 103 AD2d 979; *People v Dargento*, 302 AD2d 924.) III. The trial court erred in accepting the breathalyzer reading as .07% beyond a reasonable doubt. IV. The People did not meet their burden of proof by the use of the testimony of Constable McCarthy alone.

*Gerstenzang, O'Hern, Hickey, Sills & Gerstenzang*, Albany (*Eric H. Sills* of counsel), for New York State Defenders Association, amicus curiae. The Court should adhere to its prior decision in *People v Todd* (38 NY2d 755 [1975]). (*People v Freeland*, 68 NY2d 699; *People v Meikrantz*, 77 Misc 2d 892; *People v Todd*, 79 Misc 2d 630; *People v Mertz*, 68 NY2d 136; *People v Dargento*, 302 AD2d 924; *People v Sawinski*, 148 AD2d 888; *People v Manino*, 147 AD2d 926; *People v English*, 103 AD2d 979; *People v Pompilio*, 137 Misc 2d 997; *People v DeMarasse*, 85 NY2d 842.)

### OPINION OF THE COURT

GRAFFEO, J.

In this case, we consider whether our decision in *People v Todd* (38 NY2d 755 [1975]) adopted a standard requiring that breath-alcohol detection devices must be calibrated at least every six months in order for the test results to be admissible at trial. We hold that there is no per se, six-month rule and that the People must instead lay a foundation demonstrating that the particular device used was in proper working order when the test was administered.

On November 3, 2007, Constable McCarthy of the Town of Bethel police force observed a minivan parked on the side of a road directly underneath a "no standing" sign. A few minutes later, McCarthy saw defendant Dragan Boscic walk from a nearby convenience store and get into the minivan. As defendant started to drive the minivan forward, McCarthy pulled the police car in front of it and exited the vehicle.

According to McCarthy, when he approached the minivan, he smelled alcohol on defendant's breath, saw that his eyes were glassy and bloodshot, and noticed that his speech was slightly slurred. McCarthy asked defendant if he had consumed alcohol and defendant admitted to drinking three beers. McCarthy then requested that defendant perform five field sobriety tests. After defendant's poor performance on some of these tests, he was arrested for suspicion of drunk driving. Later, at the Sullivan County Sheriff's Office, McCarthy used a breath-alcohol machine—the BAC DataMaster—to test defendant. The device

issued a reading indicating that defendant's blood alcohol level was .07%. Defendant was charged with violating Vehicle and Traffic Law § 1192 (1)—driving while ability impaired by the consumption of alcohol.

During the bench trial in Bethel Justice Court, the People sought to introduce, through the testimony of Constable McCarthy, the results of the breath-alcohol test. As part of the foundation presented in support of the admissibility of the test results, the People offered a police record certifying that the DataMaster had been calibrated (i.e., checked and adjusted by a trained technician) by an employee of the State Division of Criminal Justice Services on April 6, 2007—approximately six months and three weeks before the test was administered to defendant. Defense counsel argued against admission of the test results on the basis that the People failed to lay an adequate foundation, asserting that *People v Todd* (38 NY2d 755 [1975]) required that breathalyzer machines must be calibrated at least every six months and the calibration in this case was untimely. Justice Court rejected that contention and concluded that the People demonstrated that the DataMaster device was working properly at the time defendant was tested. Defendant was found guilty as charged.

On appeal, Sullivan County Court reversed and dismissed the accusatory instrument (24 Misc 3d 1227[A], 2009 NY Slip Op 51649[U] [2009]). The court interpreted *Todd* as creating a six-month calibration rule and therefore held that the DataMaster results were inadmissible because the device had not been calibrated within six months of defendant's arrest. County Court also ruled that, without the breath-alcohol test results, McCarthy's trial testimony was insufficient as a matter of law to prove defendant's guilt beyond a reasonable doubt. A Judge of this Court granted the People leave to appeal (13 NY3d 937 [2010]) and we now reverse.

Breath-alcohol detection machines have long been considered scientifically reliable, but it remains necessary for the proponent of breath-alcohol test evidence to establish an adequate evidentiary foundation for the admission into evidence of the results of the test (*see e.g. People v Mertz*, 68 NY2d 136, 148 [1986]). The issue here is whether, as a predicate to the admissibility of this evidence, there needed to be proof that the instrument used to test defendant had been calibrated during the past six months. Defendant claims that *People v Todd* (38 NY2d 755

[1975]) established a six-month calibration requirement that was not met here. Although *Todd* is susceptible to such an interpretation, we do not read it in such a rigid manner.

The trial evidence in *Todd* indicated that the breathalyzer machine "was constantly left on at the [state police] barracks and never turned off," and had been calibrated more than six months before it was utilized to test the defendant (79 Misc 2d 630, 633 [County Ct, Delaware County 1974]). The intermediate appellate court believed that those "two factors taken together raise[d] a reasonable doubt . . . as to the reliability of that particular machine" (*id.*). We agreed in a memorandum decision, explaining that "[t]he People failed to establish that the breathalyzer apparatus had been timely calibrated" and that "[i]t was incumbent upon the District Attorney to show that the machine was in proper working order" (38 NY2d at 756). Our decision was necessarily premised on both of these interrelated circumstances—a breathalyzer device that had never been deactivated and, in light of its continuous operation, had not been recently calibrated. Thus, *Todd* did not explicitly articulate a six-month standard or allude to a specific calibration time frame.

We have not relied on a six-month, bright-line rule in subsequent cases that dealt with the foundation requirements for breath-alcohol evidence. Rather than applying a specific temporal limitation, our post-*Todd* decisions have repeatedly emphasized that the applicable principle is whether the detection instrument was in "proper working order" at the time a test was administered (*People v Gower*, 42 NY2d 117, 120 [1977]; *People v Freeland*, 68 NY2d 699, 700 [1986]; *People v Kinne*, 71 NY2d 879, 880 [1988]; *see People v Alvarez*, 70 NY2d 375, 380 [1987]; *People v Mertz*, 68 NY2d at 148). The Third and Fourth Departments have interpreted our precedent similarly and rejected the notion that it is impossible for a breath-alcohol device to function properly simply because it has not been calibrated for six months (*see e.g. People v Dargento*, 302 AD2d 924 [4th Dept 2003]; *People v Manino*, 147 AD2d 926 [4th Dept 1989]; *People v English*, 103 AD2d 979, 980 n * [3d Dept 1984]). We concur with that view and therefore hold that such evidence is admissible if the People demonstrate that the machine was in proper working order at the time it issued the test results in question.

*Todd* was decided almost 35 years ago and in the ensuing decades, scientific knowledge has advanced dramatically, leading

to significant technological changes in breath-alcohol detection devices. The scientific methods incorporated in modern-day breath testing instruments are substantially different from the earlier generations of these devices. For instance, in 1975 when *Todd* was decided, the prevalent scientific process for breath-alcohol analysis involved chemical oxidation, wherein a breath sample was passed through an ampule containing a chemical mixture (usually potassium dichromate in sulfuric acid). The degree of ethanol content in the breath stimulated changes in the absorption abilities of the solution that could be detected by transmitting light through the sample. Results were then compared with an unreacted sample of the solution to achieve a blood-alcohol concentration reading (*see* Faigman et al., 5 Modern Scientific Evidence: The Law and Science of Expert Testimony § 41:55; 2 Giannelli and Imwinkelried, Scientific Evidence § 22.03 [b], at 380 [4th ed]). More recent technology relies on infrared absorption spectrometry. This technology— which is used in the BAC DataMaster—calculates blood-alcohol concentration by passing infrared light through a chamber holding the breath sample to gauge the absorption rate of "infrared radiation at specific wavelengths" (Faigman et al., 5 Modern Scientific Evidence: The Law and Science of Expert Testimony § 41:52; *see* 2 Giannelli and Imwinkelried, Scientific Evidence § 22.03 [b], at 389 [4th ed]; Rose, New York Vehicle and Traffic Law § 35:21 [2d ed]). Given the technological advances that have occurred and will continue to evolve, paired with the proliferation of available breath-alcohol detection devices approved for use by the New York State Department of Health (DOH) (*see* 10 NYCRR 59.4),* we do not believe that a court-imposed calibration timing rule for all current technologies would be helpful in achieving the primary objective, which is to provide the factfinder a basis to determine whether the particular instrument used produced reliable results in a specific instance. Even if we had articulated a bright-line calibration rule more than three decades ago, the changes in scientific testing methods would have provided reason to revisit it.

It further bears noting that both parties to this litigation recognize that DOH has been charged by the Legislature to evaluate and approve specific models of breath-alcohol testing machines (*see* Vehicle and Traffic Law § 1194 [4] [c]). In its

---

* DOH currently lists about 100 different models of breath-alcohol testing devices (including the DataMaster) that are approved for use by law enforcement agencies (*see* 10 NYCRR 59.4 [b]).

regulatory capacity, DOH has determined that such instruments must be calibrated "at a frequency as recommended by the device manufacturer" but not less than once a year (10 NYCRR 59.4 [c] [eff Apr. 23, 2010, as amended July 22, 2010]). The promulgation of these regulations will, for arrests occurring after the effective date of the regulations, provide courts with information regarding recommended calibration intervals, not to exceed one year, when assessing the adequacy of foundation requirements for the admissibility of breath-alcohol test results. But here, there is no question that section 59.4 (c) of the regulations—the provision addressing calibration standards—was not effective at the time of defendant's arrest, and the People do not assert that this regulation supplies the applicable standard in this case.

We therefore rely on our holding that there has been no strict six-month calibration rule pronounced by this Court for breath testing evidence. Our conclusion does not mean that appropriate and adequate calibration procedures can be disregarded by law enforcement. Rather, the admissibility of breath-alcohol analysis results remains premised on the People's ability to demonstrate, among other requirements, that the device was in "proper working order" when it was used to test an accused (*People v Freeland*, 68 NY2d at 700). And nothing prevents an accused from seeking to introduce relevant evidence that may affect other foundational issues or the weight that should be given to results generated by a particular device, as defendant attempted during his trial. In this case, the certificate in evidence attesting that the last calibration occurred slightly more than six months prior to defendant's arrest was a sufficient predicate as part of the proper foundation to receive the Data-Master results in evidence because it adequately assured that the instrument was capable of producing accurate information when defendant was tested. Consequently, Justice Court did not err as a matter of law in concluding that the DataMaster results could be considered during the trial. We therefore remit to County Court for consideration of whether the trial evidence, including the DataMaster results, was legally sufficient and, if necessary, whether the weight of the evidence supported the conviction.

Accordingly, the order of County Court should be reversed and the case remitted to that court for further proceedings in accordance with this opinion.

Chief Judge LIPPMAN and Judges CIPARICK, READ, SMITH, PIGOTT and JONES concur.

Order reversed, etc.