[985 NE2d 903, 962 NYS2d 592]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ROBERT PEALER, Appellant.

Argued January 3, 2013; decided February 19, 2013

**POINTS OF COUNSEL**

*D.J. & J.A. Cirando, Esqs.*, Syracuse (*John A. Cirando, Bradley E. Keem* and *Elizabeth deV. Moeller* of counsel), for appellant. I. The District Attorney of Seneca County was not authorized to prepare, file and serve the People's brief in the Appellate Division. (*People v Di Falco*, 44 NY2d 482; *Matter of Haggerty v Himelein*, 89 NY2d 431.) II. The police stop of appellant's vehicle was improper. (*Whren v United States*, 517 US 806; *People v Robinson*, 97 NY2d 341; *People v Wright*, 42 AD3d 942; *People v Rose*, 67 AD3d 1447; *People v Ingle*, 36 NY2d 413; *People v Wright*, 98 NY2d 657.) III. Appellant was prejudiced by Deputy Lerch's testimony that appellant requested to speak to

an attorney prior to submitting to a breath test. (*People v Von Werne*, 41 NY2d 584; *People v Goldston*, 6 AD3d 736; *People v Hunt*, 18 AD3d 891; *People v Al-Kanani*, 26 NY2d 473; *People v Bianculli*, 9 NY2d 468; *People v Travato*, 309 NY 382; *People v Fisher*, 18 NY3d 964.) IV. Appellant was denied his constitutional right to confront the witnesses against him when the trial court admitted certified documents into evidence under the business record exception to the hearsay rule. (*People v Mertz*, 68 NY2d 136; *People v Huertas*, 75 NY2d 487; *People v Nieves*, 67 NY2d 125; *People v Settles*, 46 NY2d 154; *People v Gaimari*, 176 NY 84; *Crawford v Washington*, 541 US 36; *Melendez-Diaz v Massachusetts*, 557 US 305; *People v Brown*, 13 NY3d 332; *People v Freycinet*, 11 NY3d 38; *People v Rawlins*, 10 NY3d 136.) V. Appellant was denied due process of law due to prosecutorial misconduct. (*People v Bailey*, 58 NY2d 272; *People v Zimmer*, 51 NY2d 390; *People v Higgins*, 88 AD2d 921, 57 NY2d 678; *People v Toomer*, 87 AD2d 875; *People v Millard*, 247 App Div 253; *People v Alicea*, 37 NY2d 601; *People v De Tore*, 34 NY2d 199; *People v Whalen*, 59 NY2d 273; *People v Rivera*, 116 AD2d 371; *People v Mott*, 94 AD2d 415.) VI. The trial court erred in allowing improper and prejudicial rebuttal testimony. (*Marshall v Davies*, 78 NY 414; *People v Harris*, 84 AD2d 63, 57 NY2d 335, 460 US 1047; *People v Schwartzman*, 24 NY2d 241, 396 US 846; *People v Castro*, 101 AD2d 392, 65 NY2d 683; *People v Crimmins*, 36 NY2d 230.) VII. Appellant's constitutional right to a fair trial was violated. (*People v Crimmins*, 36 NY2d 230; *People v Robinson*, 71 AD2d 1008; *People v Tucker*, 133 AD2d 787.)

*Jason L. Cook, District Attorney*, Penn Yan, and *Hannah E.C. Moore, New York Prosecutors Training Institute, Inc.*, Albany, for respondent. I. The Appellate Division correctly upheld the trial court's determination that the vehicle stop was proper since defendant was initially stopped for a violation of the Vehicle and Traffic Law. (*People v Robinson*, 97 NY2d 341; *Whren v United States*, 517 US 806; *People v Petikas*, 10 Misc 3d 915; *People v Edwards*, 14 NY3d 741; *People v Mundo*, 99 NY2d 55; *People v Wright*, 98 NY2d 657; *People v Jeffery*, 2 AD3d 1271; *People v Lowe*, 12 NY3d 768; *People v Krom*, 61 NY2d 187.) II. As the Appellate Division found, the admission of breath test documents did not violate defendant's Sixth Amendment right to confront the witnesses against him. (*People v Carreira*, 27 Misc 3d 293; *People v Lebrecht*, 13 Misc 3d 45; *Crawford v Washington*, 541 US 36; *Marks v United States*, 430 US 188; *United States v Cundiff*, 555 F3d 200; *Nichols v United States*, 511 US 738; *Green v DeMarco*, 11 Misc 3d 451; *People v Kanhai*,

8 Misc 3d 447; *People v Krueger*, 9 Misc 3d 950; *People v Fisher*, 9 Misc 3d 1121[A], 2005 NY Slip Op 51726[U].) III. Defendant's claim that he was prejudiced by Officer Lerch's testimony that he requested to speak to an attorney prior to submitting to a breath test is unpreserved and without merit, and was properly rejected by the Appellate Division. (*People v Patterson*, 39 NY2d 288; *People v Al-Kanani*, 26 NY2d 473; *People v Von Werne*, 41 NY2d 584; *People v Smith*, 18 NY3d 544; *People v Shaw*, 72 NY2d 1032; *People v Curkendall*, 12 AD3d 710; *Matter of Jimmy D.*, 15 NY3d 417; *People v Scott*, 86 NY2d 864; *People v Crimmins*, 36 NY2d 230.) IV. The trial court properly allowed rebuttal testimony, and the Appellate Division properly rejected this claim. (*People v Harris*, 98 NY2d 452; *People v Blair*, 90 NY2d 1003; *People v Hernandez*, 71 NY2d 233; *People v Taylor*, 24 AD3d 1269; *People v Crimmins*, 36 NY2d 230.) V. The prosecutor's conduct did not deprive defendant of a fair trial, and this unpreserved claim was properly rejected by the Appellate Division. (*People v Ashwal*, 39 NY2d 105; *Williams v Brooklyn El. R.R. Co.*, 126 NY 96; *People v Ortiz*, 116 AD2d 531; *People v Galloway*, 54 NY2d 396; *People v D'Alessandro*, 184 AD2d 114; *People v Calabria*, 94 NY2d 519; *People v Arce*, 42 NY2d 179; *People v Savinon*, 100 NY2d 192; *People v Heide*, 84 NY2d 943; *People v Medina*, 53 NY2d 951.) VI. The People's Appellate Division brief was properly prepared and filed, and this issue is not properly before this Court. (*People v Ford*, 69 NY2d 775; *People v Paz*, 158 AD3d 1008; *People v Perez*, 67 AD3d 1324; *People v Higgins*, 55 AD3d 1303; *People v Chianese*, 41 AD3d 1168; *People v Bowen*, 17 AD3d 1054; *People v Delair*, 6 AD3d 1152; *People v Brown*, 6 AD3d 1125; *People v Allen*, 301 AD2d 57; *People v Luedecke*, 22 AD2d 636.)

*Cyrus R. Vance, Jr., District Attorney*, New York City (*Susan Axelrod* of counsel), and *Morrie I. Kleinbart*, Staten Island, for District Attorneys Association of the State of New York, amicus curiae. I. Records of the results of tests that are done as part of the Police Department's administrative requirements to maintain its equipment in proper working order, and that are not prepared in connection with or anticipation of a particular defendant's prosecution, are not testimonial. (*Crawford v Washington*, 541 US 36; *Davis v Washington*, 547 US 813; *Melendez-Diaz v Massachusetts*, 557 US 305; *People v Fisher*, 9 Misc 3d 1121[A], 2005 NY Slip Op 51726[U]; *People v Brown*, 13 NY3d 332; *People v Rawlins*, 10 NY3d 136; *People v Hulbert*, 93 AD3d 953; *People v Damato*, 79 AD3d 1060; *People v Lent*, 29 Misc 3d 14; *People v Bonner*, 31 Misc 3d 142[A], 2011 NY Slip Op

50830[U].) II. The assistance rendered by District Attorney Porsch was lawful and appropriate. (*People v Di Falco*, 44 NY2d 482; *Matter of Lewis v Carter*, 220 NY 8; *Matter of Sedore v Epstein*, 56 AD3d 60; *People v Herman*, 187 AD2d 1027; *People v Coger*, 2 AD3d 1279; *People v McClure*, 26 AD3d 674; *Matter of Haggerty v Himelein*, 89 NY2d 431; *Matter of Schumer v Holtzman*, 60 NY2d 46; *People v Sanducci*, 195 NY 361.)

## OPINION OF THE COURT

GRAFFEO, J.

The question presented in this appeal is whether records pertaining to the routine inspection, maintenance and calibration of breathalyzer machines can be offered as evidence in a criminal trial without producing the persons who created the records. We hold that because such documents are nontestimonial, the records are not subject to the Confrontation Clause requirements set forth in *Crawford v Washington* (541 US 36 [2004]).

I

Early one morning in October 2008, the Penn Yan Police Department in Yates County received an anonymous telephone call indicating that someone who was possibly intoxicated had left a particular restaurant and was driving a gray car with a sticker on its rear window. Shortly after receiving this information, a police officer on patrol saw a gray 1996 Subaru and he followed the car for several minutes. After observing the car weaving, he stopped the vehicle for the illegal window sticker (*see* Vehicle and Traffic Law § 375 [1] [b] [i]).

The driver, defendant Richard Pealer, stated that he had just left work at the restaurant that had been identified by the tipster. When asked if he had consumed any alcohol, defendant replied that he had "two beers" after finishing his shift. The officer noticed that defendant's eyes were red and glossy, his speech was impaired and defendant had an odor of alcohol. After defendant failed several field sobriety tests and a breath screening test confirmed that defendant had been drinking, he was arrested for driving while intoxicated (*see* Vehicle and Traffic Law § 1192 [3]).

At the police station, defendant telephoned a lawyer and then agreed to take a breathalyzer test. A breath-test operator conducted the testing and the machine computed defendant's blood alcohol content at .15% (close to twice the legal limit).

Defendant was eventually indicted for felony DWI (defendant had two prior felony DWI convictions).

During the jury trial, the People offered into evidence documents pertaining to the routine calibration and maintenance of the breathalyzer machine used in defendant's breath test, in order to demonstrate that it was in proper working order at the time defendant was tested. Specifically, two of the documents certified that the breathalyzer had been calibrated by the New York State Division of Criminal Justice Services in Albany in September 2008 and March 2009, respectively. The third document stated that a sample of the simulator solution had been analyzed and approved for use in the breathalyzer by the State Police. The People intended to introduce these records through the testimony of the officer who administered the breathalyzer test to defendant.

Defendant raised a Confrontation Clause challenge to these documents, contending that he was entitled to cross-examine the authors of the three records. County Court disagreed and allowed the documents to be received in evidence. The jury found defendant guilty of DWI as a D felony (along with driving while ability impaired) and defendant was later sentenced to a prison term of $2^1/_3$ to 7 years.

The Appellate Division affirmed (89 AD3d 1504 [4th Dept 2011]), concluding that no Confrontation Clause error had occurred. It reasoned that the breathalyzer documents were neither accusatory nor testimonial because they merely established the functionality of the machine and did not directly prove an element of the charged crimes or specifically inculpate defendant.

A Judge of this Court granted defendant leave to appeal (18 NY3d 961 [2012]) and we now affirm.

## II

Defendant argues that the People's use of the three breathalyzer records violated his rights under the Confrontation Clause since he was not given an opportunity to cross-examine the persons who performed the testing of the machine or the simulator solution. According to defendant, the records were testimonial in nature since their purpose was to prove that the breathalyzer was in proper working order and, consequently, they were created in anticipation of their use in a criminal proceeding. The People counter that the documents were not testimonial

because they were not generated for use against a specific individual, nor did they establish an element of the crimes charged.

The Confrontation Clause of the Sixth Amendment to the United States Constitution prohibits the "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant ha[s] had a prior opportunity for cross-examination" (*Crawford v Washington*, 541 US at 53-54). The key inquiry focuses on the category that a statement falls into—whether the nature of the statement or record is testimonial or nontestimonial (*see Michigan v Bryant*, 562 US —, —, 131 S Ct 1143, 1152-1153 [2011]; *Davis v Washington*, 547 US 813, 823-824 [2006]). "[T]he basic objective of the Confrontation Clause . . . is to prevent the accused from being deprived of the opportunity to cross-examine the declarant about statements taken for use at trial" and a statement will be treated as testimonial only if it was "procured with a primary purpose of creating an out-of-court substitute for trial testimony" (*Michigan v Bryant*, 562 US at —, 131 S Ct at 1155). If a different purpose underlies its creation, the issue of admissibility of the statement is subject to federal or state rules of evidence rather than the Sixth Amendment (*see id.*).

Based on relevant precedent, we have identified two factors that are "especially important" in resolving whether to designate a statement as testimonial—"first, whether the statement was prepared in a manner resembling ex parte examination and second, whether the statement accuses defendant of criminal wrongdoing" (*People v Rawlins*, 10 NY3d 136, 156 [2008], *cert denied sub nom. Meekins v New York*, 557 US —, 129 S Ct 2856 [2009]). Furthermore, the "purpose of making or generating the statement, and the declarant's motive for doing so," also "inform these two interrelated touchstones" (*People v Rawlins*, 10 NY3d at 156).

We have held that the Confrontation Clause applies to an affidavit of an employee of the Department of Motor Vehicles attesting to the revocation of an accused's license in a prosecution for aggravated unlicensed operation of a motor vehicle in the first degree because the document had an accusatory purpose in that it provided proof of an element of the crime and resembled testimonial hearsay (*see People v Pacer*, 6 NY3d 504, 512 [2006]). Similarly, fingerprint comparison reports that directly linked the accused to the charged crimes "could be nothing but testimonial" (*People v Rawlins*, 10 NY3d at 157). The same held true for an affidavit identifying a substance connected to the

defendant as cocaine (*see Melendez-Diaz v Massachusetts*, 557 US 305, 310-311 [2009]) and a report certifying that the accused's blood alcohol content was above the legal limit (*see Bullcoming v New Mexico*, 564 US —, —, 131 S Ct 2705, 2716-2717 [2011])—both of these documents were generated for law enforcement purposes in order to establish a necessary element of the charged offenses.

In contrast, we determined that a graphical DNA report that did not explicitly tie the accused to a crime was deemed to be nontestimonial since it "shed no light on the guilt of the accused in the absence of an expert's opinion that the results genetically match a known sample" (*People v Rawlins*, 10 NY3d at 159; *see also People v Brown*, 13 NY3d 332, 340-341 [2009]; *Williams v Illinois*, 567 US —, —, 132 S Ct 2221, 2243 [2012, plurality op] ["the primary purpose of the (DNA) report, viewed objectively, was not to accuse (the) petitioner or to create evidence for use at trial. . . . (I)ts primary purpose was to catch a dangerous rapist who was still at large, not to obtain evidence for use against (the) petitioner, who was neither in custody nor under suspicion at that time"]). A similar conclusion applied to an autopsy report prepared by a civilian agency in that it was a contemporaneous, objective account of observable facts that did not link the commission of the crime to a particular person (*see People v Freycinet*, 11 NY3d 38, 42 [2008]).

We now consider these principles in assessing the admissibility of the breathalyzer calibration and maintenance documents in this case. As our case law makes clear, to determine whether these records are the functional equivalent of in-court testimony, it is necessary to identify the primary purpose for their creation by evaluating the following factors:

> "(1) whether the agency that produced the record is independent of law enforcement; (2) whether it reflects objective facts at the time of their recording; (3) whether the report has been biased in favor of law enforcement; and (4) whether the report accuses the defendant by directly linking him or her to the crime" (*People v Brown*, 13 NY3d at 339-340).

In examining these factors, the records at issue bear some resemblance to traditional testimonial hearsay because they contain certified declarations of fact attesting that the breathalyzer machine was functioning properly and its readings were accurate and reliable. Nevertheless, the remaining considerations

weigh against application of the Confrontation Clause. *Melendez-Diaz* recognized the possibility that records "prepared in the regular course of equipment maintenance"—precursors to an actual breathalyzer test of a suspect—"may well qualify as non-testimonial records" (557 US at 311 n 1). It may reasonably be inferred that the primary motivation for examining the breathalyzer was to advise the Penn Yan Police Department that its machine was adequately calibrated and operating properly (*see generally People v Boscic*, 15 NY3d 494, 500 [2010]). The testing of the machine was performed by employees of the Division of Criminal Justice Services, an executive agency that is independent of law enforcement agencies, whose task was to ensure the reliability of such machines—not to secure evidence for use in any particular criminal proceeding. The fact that the scientific test results and the observations of the technicians might be relevant to future prosecutions of unknown defendants was, at most, an ancillary consideration when they inspected and calibrated the machine.

Relatedly, it is also significant that, as with an autopsy report or a graphical DNA report, and unlike the certification of the accused's actual blood alcohol content in *Bullcoming*, the breathalyzer testing certificates do not directly inculpate defendant or prove an essential element of the charges against him. All three records simply reflected objective facts that were observed at the time of their recording in order to establish that the breathalyzer would produce accurate results, rather than to prove some past event. At their core, these documents should be viewed as business records (*see* CPLR 4518 [a]) which, as a class, are generally deemed nontestimonial (*see People v Rawlins*, 10 NY3d at 150 n 11; *Crawford*, 541 US at 56).

For these reasons, we believe that the US Supreme Court's primary purpose test, and the analytical framework articulated in *Rawlins*, *Freycinet* and *Brown*, indicate that the breathalyzer calibration documents offered in this case were not testimonial in nature. Although it has been suggested that *Melendez-Diaz* pronounced a shift in Confrontation Clause analysis that might call our precedent into question, we reject this assertion. *Melendez-Diaz* itself avowed that it was not breaking new ground because it "involve[d] little more than the application of [the] holding in *Crawford*" (557 US at 329). Moreover, both before and after *Melendez-Diaz* was decided, a virtually uniform national consensus emerged classifying documents similar to these as nontestimonial (*see e.g. State v Benson*, 287 P3d 927,

932 [Kan 2012]; *Chambers v State*, 2012 Ark 407, *8, — SW3d —, — [2012]; *State v Lutz*, 820 NW2d 111, 117-118 [ND 2012]; *State v Britt*, 283 Neb 600, 603, 813 NW2d 434, 437 [2012]; *Matthies v State*, 85 So 3d 838, 844 [Miss 2012], *cert denied* 568 US —, 133 S Ct 317 [2012]; *Commonwealth v Zeininger*, 459 Mass 775, 788-789, 947 NE2d 1060, 1070 [2011], *cert denied* 565 US —, 132 S Ct 462 [2011]; *State v Chun*, 194 NJ 54, 144, 943 A2d 114, 167-168 [2008], *cert denied* 555 US 825 [2008]; *State v Fischer*, 272 Neb 963, 971-972, 726 NW2d 176, 182-183 [2007]; *Rackoff v State*, 281 Ga 306, 309, 637 SE2d 706, 709 [2006]; *Commonwealth v Walther*, 189 SW3d 570, 575 [Ky 2006]; *State v Carter*, 326 Mont 427, 437, 114 P3d 1001, 1007 [2005]).[1] Additionally, the Appellate Divisions that have considered this issue have concurred that, even under *Melendez-Diaz*, these types of records fall outside the ambit of the Confrontation Clause (*see e.g. People v Hulbert*, 93 AD3d 953, 953-954 [3d Dept 2012]; *People v Damato*, 79 AD3d 1060, 1061-1062 [2d Dept 2010]).

We endorse this widely-held view and hold that documents pertaining to the routine inspection, maintenance and calibration of breathalyzer machines are nontestimonial under *Crawford* and its progeny. Consequently, the Confrontation Clause was not implicated in this case and the trial judge did not err in declining defendant's request to cross-examine the authors of the testing records before the court ruled on their admissibility.

### III

■ Defendant raises additional issues, many of which are either unpreserved or otherwise unreviewable, and the remainder

---

**1.** *See also State v Kramer*, 153 Idaho 29, 36 (Ct App 2012); *State v Lindner*, 227 Ariz 69, 71-72, 252 P3d 1033, 1035-1036 (Ct App 2010), *cert denied* 565 US —, 132 S Ct 1111 (2012); *Jacobson v State*, 306 Ga App 815, 818, 703 SE2d 376, 379 (2010); *People v Jacobs*, 405 Ill App 3d 210, 217, 939 NE2d 64, 71 (2010); *Ramirez v State*, 928 NE2d 214, 220 (Ind Ct App 2010), *transfer denied* 940 NE2d 824 (2010); *Settlemire v State*, 323 SW3d 520, 522 (Tex Ct App 2010); *Commonwealth v Dyarman*, 2011 PA Super 245, 33 A3d 104, 108 (2011), *appeal granted* 41 A3d 1282 (2012); *Hamilton v State*, 2010 WL 4260608, *3, 2010 Alas App LEXIS 125, *7-10 (Alaska Ct App 2010); *State v Bergin*, 231 Or App 36, 42, 217 P3d 1087, 1090 (2009), *review denied* 348 Or 280, 230 P3d 933 (2010); *Salt Lake City v George*, 189 P3d 1284, 1289 (Utah Ct App 2008), *cert denied* 200 P3d 193 (2008); *Pflieger v State*, 952 So 2d 1251, 1254 (Fla Ct App 2007); *State v Marshall*, 114 Hawai'i 396, 402, 163 P3d 199, 205 (Ct App 2007), *cert denied* 117 Hawai'i 234 (2007); *United States v Forstell*, 656 F Supp 2d 578, 581 (ED Va 2009). *But see United States v Gorder*, 726 F Supp 2d 1307, 1314 (D Utah 2010); *People v Carreira*, 27 Misc 3d 293, 296 (Watertown City Ct 2010).

lack merit: the curative instruction during the prosecutor's summation corrected any perceived error (*see People v Heide*, 84 NY2d 943, 944 [1994]); it was not an abuse of discretion to permit a rebuttal witness (*see People v Anonymous*, 96 NY2d 839, 840 [2001]); defendant has failed to demonstrate that he was deprived of meaningful legal assistance (*see e.g. People v Baker*, 14 NY3d 266, 270 [2010]); and there was no basis for suppression (*see e.g. People v Edwards*, 14 NY3d 741, 742 [2010]).[2]

Accordingly, the order of the Appellate Division should be affirmed.

PIGOTT, J. (dissenting in part). While I concur with the majority's Confrontation Clause analysis, I part company with it on the reasonableness of the police officer's initial stop of defendant. The suppression court ruled that the police officer lacked probable cause to stop the defendant but for the fact that defendant had a Finger Lakes Community College sticker in the rear window (police officer: "I can't recall what side it was on, the left or the right").

Prior to 2001, all four Departments of the Appellate Division uniformly held that evidence obtained as a result of pretext stops was inadmissible (*see People v Young*, 241 AD2d 690 [3d Dept 1997]; *People v Roundtree*, 234 AD2d 612 [2d Dept 1996]; *People v Laws*, 213 AD2d 226 [1st Dept 1995]; *People v Camarre*, 171 AD2d 1002 [4th Dept 1991]). Then, in *People v Robinson* (97 NY2d 341 [2001]), this Court adopted the rationale of *Whren v United States* (517 US 806 [1996]), which held that an investigatory stop is valid, regardless of the officer's motivation, so long as there is an *objectively reasonable* basis for it (*see id.* at 812-815).

In my view, the stop in this case was not objectively reasonable, and was premised on what could only be deemed a "de minimis" violation of Vehicle and Traffic Law § 375 (1) (b) (i). That section provides that "[t]he use or placing of posters or stickers on windshields or rear windows of motor vehicles other than those authorized by the commissioner, is hereby prohibited." The concern, of course, as the commissioner notes in the regulations, is that the placement of such items not approved by

---

2. [2] Probable cause to believe that the Vehicle and Traffic Law has been violated provides an objectively reasonable basis for the police to stop a vehicle and, contrary to the dissent's suggestion, there is no exception for infractions that are subjectively characterized as "de minimis" (*see e.g. People v Robinson*, 97 NY2d 341, 349 [2001]).

the commissioner will "interfere with visibility" (15 NYCRR 174.1).

Here, the suppression court concluded that an anonymous tip and the fact that defendant's car was weaving, but within its lane of traffic, were insufficient to justify the stop. However, the suppression court found that the presence of a transparent college sticker located on the bottom, left-hand corner of the rear windshield of defendant's car at 1:26 a.m. provided sufficient justification to stop defendant's vehicle. While having a sticker on the car's back window may have transgressed section 375 (1) (b) (i), this is the type of school pride that is commonly exercised by New York drivers every day and, I suspect, the statute is rarely, if ever, enforced. Stopping a vehicle at 1:26 in the morning because of a college sticker on the back window is, in my view, not objectively reasonable and therefore the evidence discovered as a result of the stop should have been suppressed.

SMITH, J. (concurring). I join Judge Graffeo's majority opinion, and add this concurrence to reply to the dissent.

I concede that my dissenting colleague has a point; like him, I am uncomfortable with what happened in this case. It presents an extreme example of the opportunities given to law enforcement officers by the United States Supreme Court's holding in *Whren v United States* (517 US 806 [1996]), and ours in *People v Robinson* (97 NY2d 341 [2001]), that a traffic stop made with probable cause may not be challenged as pretextual—i.e., that the motive for the stop is irrelevant. Here, the pretext—a small sticker in a corner of a car's rear window—is as transparent as the sticker. But under *Whren* and *Robinson* that does not matter.

The dissent suggests that, where police blatantly exploit a trivial offense, we can avoid the more unpleasant consequences of *Whren* and *Robinson* by finding the officers' actions to be "not objectively reasonable" (dissenting op at 457). The dissent's position is similar to that of the dissenters in *Atwater v Lago Vista* (532 US 318, 360-373 [2001, O'Connor, J., dissenting])—a case involving an arrest, not just a traffic stop. In *Atwater*, a woman was arrested, without a warrant, for an offense (having her children in the front seat of a car without seatbelts) punishable only by a fine under state law. The Supreme Court majority held that the arrest was consistent with the Fourth Amendment. It concluded that a state does not violate the Federal Constitution when it authorizes warrantless arrest for a criminal offense, no matter how minor (532 US at 354).

It is clear from *Atwater* that there was no violation of the Federal Constitution here. Indeed, for two reasons, this case is a fortiori from *Atwater*; defendant here was not arrested for the traffic infraction, and his offense, unlike Atwater's, could theoretically be punished by imprisonment (*see* Vehicle and Traffic Law § 375 [32]). We have not addressed the *Atwater* issue in interpreting our State Constitution (NY Const, art I, § 12), though we have held that the seriousness of an offense is relevant to the validity of a search incident to arrest (*People v Marsh*, 20 NY2d 98, 102-103 [1967] [search not justified by arrest for "minor traffic violations"]; *see also People v Troiano*, 35 NY2d 476, 478 [1974] [suggesting that the rule of *Marsh* applies only "where an arrest was not necessary"]; *People v Howell*, 49 NY2d 778 [1980] [suppressing evidence in reliance on *Marsh* and *Troiano*]).

Today's dissent would hold that, under the State Constitution, an officer may be held to have acted unreasonably in stopping a car for a trivial violation of a statute. I would not accept this rule. Where the challenge is only to a traffic stop, the interference with a person's liberty is much less than when that person is arrested or searched. And while the dissent's rule may seem attractive in this case, it will be hard to administer: defendants will not hesitate to invoke it on less sympathetic facts than these, and deciding whether an officer used good judgment in stopping a car will become part of the routine fare of judges deciding suppression motions. The certainty and predictability that result from the *Whren* and *Robinson* holdings will be in large part lost.

My reluctance to agree with the dissent is fortified by my distaste for the suppression of relevant evidence as a remedy for every mistake a police officer makes. As I have said before, I think that the exclusionary rule is a blunt instrument that lets too many guilty people go free (*see People v Weaver*, 12 NY3d 433, 451 [2009, Smith, J., dissenting]; *People v Gavazzi*, 20 NY3d 907, 909-910 [2012, Smith, J., dissenting]). There are surely other remedies for law enforcement that is too aggressive. Here, the remedy seems obvious enough: the legislature can amend Vehicle and Traffic Law § 375 [1] [b] [i] to remove the ban on small, transparent stickers. That is preferable, I think, to dismissing a well-founded drunk driving prosecution because we think the sticker law has been over-enforced.

Chief Judge LIPPMAN and Judges READ and SMITH concur with Judge GRAFFEO; Judge SMITH in a separate concurring opinion; Judge PIGOTT dissents in part in an opinion; Judge RIVERA taking no part.

Order affirmed.