The People of the State of New York, Respondent,
against
Christopher Schafer, Appellant.




Scott Lockwood, for appellant.
Suffolk County District Attorney (Timothy P. Finnerty of counsel), for respondent.

Appeal from two judgments of the District Court of Suffolk County, First District (Karen M. Wilutis, J., at suppression hearing; Janine A. Barbera-Dalli, J., at trial and sentencing), rendered August 18, 2016. The judgments convicted defendant, upon jury verdicts, of driving while intoxicated (per se) and driving while intoxicated (common law), and failing to signal before turning, respectively, and imposed sentences.




ORDERED that the judgment convicting defendant of driving while intoxicated (per se) and of driving while intoxicated (common law) is affirmed; and it is further,
ORDERED that so much of the appeal as is from the judgment convicting defendant of failing to signal before turning is dismissed as abandoned.
Insofar as is relevant to this appeal, the People charged defendant on July 27, 2013, in an information, with driving while intoxicated (per se) (Vehicle and Traffic Law § 1192 [2]) and driving while intoxicated (common law) (Vehicle and Traffic Law § 1192 [3]), and, in a simplified traffic information, with failing to signal before turning (Vehicle and Traffic Law § 1163 [b]). The information alleged, among other things, that defendant had operated a motor vehicle while intoxicated and with a blood alcohol content of .14 of one per centum by weight.
Prior to the trial, the District Court (Karen M. Wilutis, J.) granted defendant's request for subpoenas duces tecum directed at the New York State Police Forensic Investigation Center [*2](Forensic Investigation Center) and the New York State Division of Criminal Justice Services for the production of "all chromatograms, laboratory notes, and any other documentary materials relating to the testing," and "all documents relating to the purchase and delivery of simulator solution . . . including . . . any receipts, bills of lading, purchase orders, shipping and billing documents, and any other materials relating to the purchase and receipt of the aforementioned simulator solution lot." An additional subpoena, directed at the Suffolk County Police Department, sought "all documents relating to the Intoxilyzer-Alcohol Analyzer Model 5000, Instrument Serial Number 6-005209, including . . . all documents from CMI, Inc., . . . brochures, operator manuals, purchasing documents, warranties, and/or extended warranties, all repair and/or maintenance documents maintained by the Suffolk County Police Department, any return material authorization (RMA) forms, and all calibration records for the machine maintained by the Suffolk County Police Department." However, the same court denied defendant's request to subpoena the state official who had certified the results of simulator solution lot tests. The court (Karen M. Wilutis, J.) subsequently granted motions by the Forensic Investigation Center and the Suffolk County Police Department to quash the subpoenas directed at them. After a suppression hearing, the court denied defendant's motion to suppress his arrest scene admission relating to alcoholic beverage consumption. Insofar as is relevant to this appeal, following a jury trial (Janine A. Barbera-Dalli, J.), defendant was convicted of driving while intoxicated, per se and common law, and of failing to signal before turning.
Defendant contends that the granting of the motions to quash the subpoenas and the refusal to authorize a subpoena to the state official denied him his right to discovery and to present a defense. Defendant further asserts that his statement should have been suppressed and that the foundation proof for the admissibility of the blood alcohol test results was legally insufficient. As defendant raises no issue on the appeal with respect to the propriety of the judgment convicting him of failing to signal before turning, so much of the appeal as is from that judgment is dismissed as abandoned.
The granting of the motions to quash the subpoenas duces tecum, under the circumstances presented, represented a provident exercise of discretion. Discovery in a criminal proceeding is governed, and generally limited, by CPL 240.20 (People v DaGata, 86 NY2d 40, 44 [1995]; see People v Colavito, 87 NY2d 423, 427 [1991] ["Items not enumerated in article 240 are not discoverable . . . unless constitutionally or otherwise specially mandated"]; Matter of Johnson v Sackett, 109 AD3d 427, 429 [2013]), such as the right of "access to exculpatory information" (People v DaGata, 86 NY2d at 44). The subpoena duces tecum authorized by CPL 240.20 (see CPLR 2307) may not otherwise be employed "for the purpose of discovery or to ascertain the existence of evidence" or "to expand the discovery available under existing law," but only to "compel the production of specific documents that are relevant and material to facts at issue in a pending judicial proceeding" (Matter of Terry D., 81 NY2d 1042, 1044-1045 [1993] [internal quotation marks omitted]; see e.g. People v Robinson, 53 AD3d 63, 67 [2008]; People v Russo, 149 AD2d 255, 262 [1989]; People v Gray, 58 Misc 3d 155[A], 2018 NY Slip Op 50184[U], *1 [App Term, 2d Dept, 9th & 10th Jud Dists 2018]; see also People v Gower, 42 NY2d 117, 121 [1977]). "A showing that certain documents carry a potential for establishing relevant evidence is insufficient; instead, a defendant must put forth some factual predicate which would make it reasonably likely that documentary information will bear relevant and exculpatory evidence" [*3](Matter of Constantine v Leto, 157 AD2d 376, 378 [1990] [internal quotation marks omitted], affd for reasons stated below 77 NY2d 975 [1991]; see e.g. People v Days, 131 AD3d 972, 974 [2015]; People v Gray, 58 Misc 3d 155[A], 2018 NY Slip Op 50184[U], *1 [App Term, 2d Dept, 9th & 10th Jud Dists 2018]; People v Vega, 57 Misc 3d 1012, 1018 [Sup Ct, Bronx County 2017]).
As a general rule, in driving-while-intoxicated prosecutions involving a breath test, the test results are admissible if the People establish " 'that the [testing] machine is accurate, that it was working properly when the test was performed and that the test was properly administered' " (People v Flores, 62 Misc 3d 46, 51 [App Term, 2d Dept, 9th & 10th Jud Dists 2018], quoting People v Campbell, 73 NY2d 481, 484 [1989]; e.g. People v Murphy, 101 AD3d 1177, 1178 [2012]). The defense is entitled to challenge, among other things, the sufficiency of the People's proof of the quality of the simulator solution (see People Boscic, 15 NY3d 494, 497 [2010]; see also People v Alvarez, 70 NY2d 375, 380 [1987]), specifically, whether the simulator solution is "of the proper kind and mixed in the proper proportion[]" (People v Freeland, 68 NY2d 699, 700 [1986]; see e.g. People v Menegan, 107 AD3d 1166, 1167 [2013]; see also 10 NYCRR 58.1 [l]). Proof that a breath test instrument is in proper working order is generally satisfied by documentary proof of calibration and maintenance tests performed on the instrument, including the operation of the simulator device, in reasonable proximity to when the breath test was administered (see People v Boscic, 15 NY3d at 500). Among the documents from the Forensic Investigation Center introduced by the People at the trial were certified copies of the "0.10 Simulator Solution Record" for solution lot numbers 13090 and 13140, used to test the simulator's functioning on July 16, 2013 and August 19, 2013, respectively, that is, 11 days prior to and 23 days after defendant's breath test, both of which contain the statement that an analyst, the state official defendant attempted to subpoena, had tested the simulator solution using "headspace gas chromatography" and had determined that, because the solution contained "the appropriate concentration of ethyl alcohol . . . [w]hen this simulator solution is used with a properly operating breath testing instrument, it will provide a a value of 0.10% within acceptable limits." 
As to most of the items sought in the subpoena directed at the Forensic Investigation Center, the subpoena lacked the necessary "good faith factual predicate sufficient for a court to draw an inference that specifically identified materials are reasonably likely to contain information that has the potential to be both relevant and exculpatory" (People v Kozlowski, 11 NY3d 223, 241 [2008]; see People v Gissendanner, 48 NY2d 543, 550 [1979]; Matter of Constantine v Leto, 157 AD2d at 378). A mere implication that the documents sought "carry a potential for establishing relevant evidence" is insufficient; instead, a defendant must allege facts from which it may be determined that it is "reasonably likely that documentary information will bear relevant and exculpatory evidence" (Matter of Constantine v Leto, 157 AD2d at 378). Most of the items identified in the subpoena had no more than an incidental association with the procedure by which the state agency obtains and tests the solution lots used by local law enforcement, and the request for these appear to represent nothing more than the attempt to "fish for impeaching material" (id.).
While "[d]ocuments relating to headspace gas chromatography tests" of the simulator solution to determine whether the composition of the solution is properly prepared for use in [*4]local testing are potentially discoverable (Matter of Singas v Engel,155 AD3d 877, 878 [2017]), the subpoena directed to the Forensic Investigation Center specified that the information sought concerned only simulator solution lot 13140 (rather than lot 13090 which had been employed to calibrate the testing instrument prior to defendant's test), used in the simulator calibration of August 19, 2013. Proof of calibration tests performed both before and after a breath test are not necessary to admit the breath test results (see 10 NYCRR 59.8 [d] ["An analysis of the reference standard shall precede or follow the analysis of the breath of the subject"]). Therefore, absent a discovery request with respect to simulator solution lot number 13090 used to calibrate the testing instrument just prior to defendant's test, the subpoena, in this respect, lacked the factual foundation establishing the sought information's "potential to be both relevant and exculpatory" (People v Kozlowski, 11 NY3d at 241; see CPL 240.20 [1] [k]; Matter of Constantine v Solomon, 194 AD2d 538, 538 [1993]; Matter of Constantine v Leto, 157 AD2d at 378; People v Gray, 58 Misc 3d 155[A], 2018 NY Slip Op 50184[U], *1).
The subpoena directed at the Suffolk County Police Department was also overbroad and without the requisite showing of materiality. Defendant does not dispute that the People produced the required repair and maintenance records for the particular instrument used in defendant's test, including the simulator solution calibration records. Since defendant failed to "put forth some factual predicate which would make it reasonably likely that documentary information will bear relevant and exculpatory evidence" (Matter of Constantine v Leto, 157 AD2d at 378 [internal quotation marks omitted]), the motion to quash was properly granted. For the reasons stated above, the subpoena seeking to compel the testimony of the state testing official was also properly denied.
Defendant's claim that the foundation proof of the breath test's results was legally insufficient because the People failed to establish that the Suffolk County Police Department had verified that the calibration value generated by the simulator was in acceptable agreement with the certified reference standard is not preserved. In his motion to dismiss at the conclusion of the People's case, defendant argued only that "the testimony from the officer regarding the calibration and maintenance of the machine is [in]sufficient to put an issue of fact before the jury," identifying no particular deficiency in the proof (see CPL 470.05 [2]; People v Hawkins, 11 NY3d 484, 492 [2008]; People v Gonzalez, 50 Misc 3d 131[A], 2015 NY Slip Op 51938[U], *4 [App Term, 2d Dept, 9th & 10th Jud Dists 2015]; People v Kostrubal, 37 Misc 3d 142[A], 2012 NY Slip Op 52280[U], *2 [App Term, 2d Dept, 9th & 10th Jud Dists 2012]). In any event, 10 NYCRR 59.5 (d), which "governs the reference standard that applies to the simulator solution, utilized just prior to the actual test performed" (People v Schuessler, 14 Misc 3d 30, 32 [App Term, 2d Dept, 9th & 10th Jud Dists 2006]) states:
"(d) The result of an analysis of a reference standard with an alcoholic content greater than or equal to 0.08 percent must agree with the reference standard value within the limits of plus or minus 0.01 percent weight per volume, or such limits as set by the commissioner . . ."
The calibrations serve to ensure that the breath test instrument is measuring a blood alcohol content within the accuracy standard set forth in 10 NYCRR 59.5 (d), and the People's foundation proof is generally sufficient to establish a proper calibration by means of a simulator solution, the integrity of which is established by the production of certified documents from the [*5]state agency responsible for acquiring and testing those solutions, and without proof of the standards employed by state agencies to certify simulator solutions for local use which, in any event, is not a necessary component of the foundation proof to admit breath test results.
The District Court properly overruled defendant's Confrontation Clause objection to the calibration document produced by the Forensic Investigation Center (see People v Pealer, 20 NY3d 447, 456 [2013]), which had been certified by the state analyst to verify that calibration and maintenance tests performed on defendant's instrument, insofar as they involve the simulator solution, sufficed to ensure that the instrument was functioning properly at the time of defendant's test. Defendant does not argue that the People's proof of the inspection and calibration records, the certificates of calibration, or the qualifications of the test administrator to conduct the test was inadequate (see e.g. People v Robinson, 53 AD3d at 72).
We also do not agree with defendant's contention that defendant was effectively in custody when the officer inquired as to whether defendant had been drinking (see People v Paulman, 5 NY3d 122, 129 [2005]). " 'The factual findings and credibility determinations of a hearing court are accorded great deference on appeal, and will not be disturbed unless clearly unsupported by the record' " (People v Parris, 26 AD3d 393, 394 [2006], quoting People v Parker, 306 AD2d 543, 543 [2003]; see e.g. People v Scire, 57 Misc 3d 157[A], 2017 NY Slip Op 51661[U], *1 [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2017]). The hearing court concluded that the testimony had established that defendant's routine traffic stop, based on multiple Vehicle and Traffic Law violations, was "justified at its inception" (People v Banks, 85 NY2d 558, 562 [1995]; see People v Guthrie, 25 NY3d 130, 132 [2015] [probable cause required for a vehicle stop]; e.g. People v John, 119 AD3d 709, 709 [2014]; People v Gramajo, 49 Misc 3d 131[A], 2015 NY Slip Op 51435[U], *1 [App Term, 2d Dept, 9th & 10th Jud Dists 2015]), and that the ensuing roadside driving-while-intoxicated investigation properly commenced when defendant exhibited indicia of alcoholic beverage consumption, which included the erratic operation of his vehicle, his physical appearance, his slurred speech, and the odor of an alcoholic beverage on his breath. The query as to whether defendant had been drinking occurred in the initial stage of that investigation. Merely because the officer had not yet returned defendant's driver's license when he asked defendant if he had been drinking did not establish a custodial context (see e.g. People v Ortiz, 141 AD3d 872, 874 [2016]). There were no "threats of physical or constructive restraint" (People v Cross, 52 Misc 3d 133[A], 2016 NY Slip Op 51011[U], *2 [App Term, 2d Dept, 9th & 10th Jud Dists 2016]), much less conduct on the officer's part which may " 'fairly be characterized as the functional equivalent of formal arrest' " (People v Gray, 148 AD3d 557, 557 [2017], quoting Berkemer v McCarty, 468 US 420, 442 [1984]). Thus, the District Court's conclusion that defendant was not in custody for Miranda purposes is well supported by the hearing record (see Berkemer v McCarty, 468 US at 436-437; People v Alls, 83 NY2d 94, 99 [1993]; People v Archer, 137 AD3d 449, 449 [2016]).
Finally, in the exercise of this court's authority to review the weight of the evidence (see CPL 470.15 [5]; People v Danielson, 9 NY3d 342, 348 [2007]), we find that the verdict convicting defendant of driving while intoxicated, per se and common law, is not against the weight of the evidence. 
Accordingly, the judgment convicting defendant of those charges is affirmed. 
ADAMS, P.J., GARGUILO and EMERSON, JJ., concur.

ENTER:
Paul Kenny
Chief Clerk
Decision Date: June 06, 2019