16-1579-pr
*Yancy D. Cook v. Steven R. Bayle, et al.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 27th day of December, two thousand seventeen.

Present:
> DEBRA ANN LIVINGSTON,
> GERARD E. LYNCH,
> > *Circuit Judges*,
> JED S. RAKOFF,
> > *District Judge.**

---

YANCY D. COOK,

> *Petitioner-Appellant*,

> v.                                                                16-1579

STEVEN R. BAYLE, Individually and as Director of Saratoga County Department of Probation, SUSAN CONSTANZO, Saratoga County Probation Officer,

> *Respondents-Appellees*.

JAMES A. MURPHY, III, Individually and as County Court Judge, Saratoga County, MATTHEW J. SYPNIEWSKI, Individually and as Acting County

---

* Judge Jed S. Rakoff, of the United States District Court for the Southern District of New York, sitting by designation.

Court Judge, Saratoga County, MICHAEL H. ZURLO,
Individually and as County Sheriff for Saratoga
County,

*Respondents*.

_____

| | |
|---|---|
| For Petitioner-Appellant: | BRUCE ROBERT BRYAN, Syracuse, NY |
| For Respondents-Appellees: | MATTHEW B. KELLER, Deputy Solicitor General (Nikki Kowalsk, Assistant Attorney General, Barbara D. Underwood, Solicitor General, *on the brief*), *for* Eric T. Schneiderman, Attorney General for the State of New York, New York, NY |

**UPON DUE CONSIDERATION WHEREOF IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Petitioner-Appellant Yancy D. Cook ("Cook") appeals from a judgment of the United States District Court for the Northern District of New York (Kahn, *J.*), entered on April 22, 2016, denying his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. We assume the parties' familiarity with the facts, procedural history, and specification of issues on appeal.

**I.     Background**

On May 3, 2011, Trooper Kevin Manion of the New York State Police ("NYSP") was patrolling in the town of Malta when he observed Cook's all-terrain vehicle ("ATV") complete a right-hand turn without signaling. Manion stopped the vehicle after it pulled into the driveway of a private residence. Upon approaching Cook, Manion smelled alcohol and noticed that Cook's speech was slurring and his eyes were glassy. He asked Cook whether he had consumed alcohol, and Cook responded that he had consumed two mixed drinks. Manion

administered four field sobriety tests, which Cook failed, and then used a portable screening tool to test Cook's breath, which returned a "positive" result for alcohol.

Manion arrested Cook for Driving While Intoxicated and took him to the state police barracks. There, Cook agreed to submit to a breathalyzer test. Manion administered the test using a Draeger Alcotest Model 9510 ("the breathalyzer"). The breathalyzer reported that Cook's blood alcohol content ("BAC") was .12%. A grand jury indicted Cook for Aggravated Driving While Intoxicated, in violation of New York Vehicle & Traffic Law § 1192 (2-a)(b) (with a child), and two counts of Driving While Intoxicated, in violation of New York Vehicle & Traffic Law §§ 1192 (2) and (3), respectively.

At trial, Cook argued that he was not legally intoxicated when he was operating his ATV. The government called Manion to testify about the stop and the administration of the breathalyzer test. During Manion's testimony, the government introduced into evidence calibration and maintenance records for the breathalyzer Manion used to conduct Cook's BAC test. Specifically, Exhibits 5 and 12 state that the breathalyzer had been calibrated and was working properly on dates before and after Cook's breathalyzer test was administered. Exhibit 6 describes how an analyst tested the breathalyzer's "reference gas," a sample with a known concentration of alcohol that Manion, consistent with police procedures, used to make sure the breathalyzer was accurate immediately before and after testing Cook's breath sample. Cook objected, arguing that the introduction of these exhibits violated his Sixth Amendment right of confrontation as interpreted by the United States Supreme Court in *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009), and *Bullcoming v. New Mexico*, 564 U.S. 647 (2011). The government responded that the admission of the records did not violate the Confrontation Clause

3

because they were non-testimonial.   The trial court agreed and admitted the exhibits.   The jury found Cook guilty as charged on all three counts.

Cook appealed to the Appellate Division, claiming that the trial court's admission of Exhibits 5, 6, and 12 violated his Sixth Amendment confrontation right.   The Appellate Division, citing *People v. Pealer*, 20 N.Y.3d 447 (2013), affirmed Cook's convictions, determining that the exhibits were non-testimonial in nature because the primary purpose of the breathalyzer calibration and reference gas records was to document the NYSP's efforts to ensure that its equipment was maintained in proper working order.   *People v. Cook*, 975 N.Y.S.2d 505, 2013 N.Y. Slip Op. 07885, at *1–2 (3rd Dep't 2013).   The New York State Court of Appeals denied Cook's application for leave to appeal.   *People v. Cook*, 22 N.Y.3d 1155 (2014).

In 2015, Cook filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging his judgment of conviction on the ground that his Sixth Amendment right to confront witnesses against him was violated when the trial court allowed the introduction of the calibration and maintenance records without requiring the government to produce the individuals who had "certified" the records as witnesses for cross-examination.   On April 22, 2016, the United States District Court for the Northern District of New York (Kahn, *J.*) denied the petition. This Court granted Cook a certificate of appealability.

## II.   Discussion

### A.  Standard of Review

We review *de novo* a district court's disposition of a petition for a writ of habeas corpus. *Tavarez v. Larkin*, 814 F.3d 644, 648 (2d Cir. 2016).   When the petitioner presses a claim that was "adjudicated on the merits in state court" proceedings, as here, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (codified

4

as amended in scattered sections of 8, 18, 22, 28 and 42 U.S.C.), "obliges federal courts to give deference to state courts' decisions." *Chrysler v. Guiney*, 806 F.3d 104, 117 (2d Cir. 2015) (quotation marks omitted). We may issue a writ of habeas corpus only when the state-court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). As relevant here, a principle is "clearly established Federal law" for § 2254(d)(1) purposes "only when it is embodied in a [Supreme Court] holding," *Thaler v. Haynes*, 559 U.S. 43, 47 (2010), framed at the appropriate level of generality, *see Nevada v. Jackson*, 569 U.S. 505, 512 (2013) (per curiam) (noting that framing Supreme Court precedent at too high a level of generality risks "transform[ing] even the most imaginative extension of existing case law into 'clearly established Federal law, as determined by the Supreme Court'" (citing 28 U.S.C. § 2254(d)(1))). An unreasonable application occurs when "the state court correctly identifies the governing legal principle . . . but unreasonably applies it to the facts of the particular case," *Bell v. Cone*, 535 U.S. 685, 694 (2002), so that "the state court's ruling on the claim . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement," *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

### B. The Confrontation Right

"[T]he Confrontation Clause prohibits admission at trial of out-of-court testimonial statements against a criminal defendant unless the declarant is unavailable and the defendant had a prior opportunity to cross-examine him." *Washington v. Griffin*, — F.3d —, No. 15-3831-PR, 2017 WL 5707606, at \*7 (2d Cir. Nov. 28, 2017). In *Crawford v. Washington*, 541 U.S. 36, 51–52, 68 (2004), the Court "declined to settle on a precise articulation of the term" testimonial,

5

*Washington*, 2017 WL 5707606, at *7, but has said more recently that a statement is testimonial if it was made or procured with the primary purpose of "creat[ing] an out-of-court substitute for trial testimony," *Ohio v. Clark*, — U.S. —, 135 S. Ct. 2173, 2180 (2015) (quoting *Michigan v. Bryant*, 562 U.S. 344, 358 (2011)). But "the Clause does not 'bar[] every statement that satisfies the primary purpose test,'" such as "out-of-court statements 'that would have been admissible in a criminal case at the time of the founding.'" *Washington*, 2017 WL 5707606, at *7 (quoting *Clark*, 135 S. Ct. at 2180).

Cook argues that Exhibits 5, 6, and 12 are "identical to the records" in *Melendez-Diaz* and *Bullcoming*, Pet'r Br. at 24, which addressed the meaning of "testimonial" in the context of laboratory testing of, respectively, purported narcotics and actual blood for its blood alcohol content. He argues first that that the records were testimonial because they were created by a state crime lab "required by law to assist in police investigations." *Id.*; *see also Bullcoming*, 564 U.S. at 665. Second, the records included certifications that the breathalyzer was "accurate and reliable." Pet'r Br. at 24. Third, the records were signed by the analysts who performed the calibration. Fourth, they had "titles," "bore the seal of the New York State Police," and contained "legalese" and "critical language that qualified the documents for admission as [] business records." Pet'r Br. 24–25; *see also Bullcoming,* 564 U.S. at 665. And fifth, state law "confirms that breathalyzer calibration and maintenance records were primarily intended for use in a criminal trial." Pet'r Br. at 25 (citing N.Y. C.P.L. § 240.20(1)(k)). We are not persuaded.

First, it is not clearly established that all crime lab records are testimonial. Those "created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial" may be introduced at trial without implicating the Confrontation Clause. *Melendez-Diaz,* 557 U.S. at 324. Nor has the Supreme Court held that records

6

accompanied by signatures and a seal are testimonial by virtue of such formalities. *See id.* at 322–23 (recognizing that "[a] clerk [may] by affidavit authenticate or provide a copy of an otherwise admissible record").

Next, and most significantly, although the records' creators may have anticipated that they might be used at trial, what matters is the records' *primary purpose*. *See Michigan v. Bryant*, 562 U.S. 344, 368–370 (2011) (acknowledging that individuals making statements often have "mixed motives" and that a court must "examin[e] the statements and actions of all participants in determining [a statement's] primary purpose"). And here, a reasonable court could conclude that these records had a primary purpose other than to be a substitute for in-court testimony. Unlike the records at issue in *Melendez-Diaz* and *Bullcoming*, Exhibits 5, 6, and 12, while relevant to establish that Cook was guilty, were not *created* for that purpose. *See* 557 U.S. at 311; 564 U.S. at 664. When the relevant breathalyzer tests were performed, the primary purpose of the tests was to confirm that the breathalyzer worked, "not to obtain evidence for use against petitioner, who was neither in custody nor under suspicion at that time," *Williams v. Illinois*, 567 U.S. 50, 84 (2012) (plurality). And irrespective of their evidentiary value, crime labs are required by New York State health regulations to create and keep these records. *See* 10 N.Y.C.R.R. §§ 59.4(c), (d). A reasonable jurist could conclude that these records could be introduced to "establish[] the chain of custody, authenticity of [a] sample, or accuracy of [a] testing device" without implicating the Confrontation Clause. *Melendez-Diaz*, 557 U.S. at 311 n.1.

Finally, the Supreme Court in *Melendez-Diaz* singled out "documents prepared in the regular course of equipment maintenance" as possibly qualifying "as nontestimonial records," in appropriate circumstances. *Id.* In cases involving maintenance records similar to those at

7

issue here, state and federal courts have concluded that the Confrontation Clause is not implicated by their admission. *See People v. Pealer*, 20 N.Y.3d 447, 455–56 & n.1 (2013) (noting that a "virtually uniform national consensus" of lower courts has held that maintenance records are not testimonial, and collecting cases); *United States v. Razo*, 782 F.3d 31, 34 (1st Cir. 2015) (holding that a chemist's statements about another lab's "known standard" methamphetamine sample that her lab employed did not violate the defendant's Confrontation Clause rights); *see also White v. Woodall*, 134 S. Ct. 1697, 1703 n.3 (2014) (noting that diverging lower court interpretations of Supreme Court precedents "illustrate the possibility of fairminded disagreement" and may suggest that a proposition is not clearly established for AEDPA purposes). In such circumstances, we cannot say that the state court "unreasonably applied" clearly established Supreme Court precedent "to the facts of [this] particular case," *Cone*, 535 U.S. at 694, such that its decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement," *Richter*, 562 U.S. at 103.

## Conclusion

We have considered Cook's remaining arguments and find them to be moot or without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

8