This opinion is uncorrected and subject to revision before publication in the New York Reports.
--------------------------------------------------------------------
No. 40
The People &c.,
            Respondent,
        v.
Richard Garcia,
            Appellant.
-----------------------
No. 41
The People &c.,
            Respondent,
        v.
Joshue DeJesus,
            Appellant.

Case No. 40:
        Amanda Rolat, for appellant.
        David P. Johnson, for respondent.

Case No. 41:
        Abigail Everett, for appellant.
        Alice Wiseman, for respondent.

FAHEY, J.:

        From these otherwise unrelated criminal appeals arises the question whether the introduction of purported "background

- 1 -

and narrative" evidence through the testimony of police detectives violated defendants' right to confrontation.

### *People v Garcia*

At approximately 8:30 p.m. on August 20, 2005, Michael Colon was shot to death following a streetside argument. With respect to that incident defendant was charged by indictment with, inter alia, one count each of murder in the second degree (Penal Law § 125.25 [1]) and manslaughter in the first degree (§ 125.20 [1]).

Although there were approximately 15 people in the area of the argument, only one eyewitness testified at the ensuing jury trial. On direct examination the eyewitness recalled that, during an argument he was having with Colon, defendant pointed a gun at Colon and fired three to four shots at him. The eyewitness ran to her automobile after the first shot was fired but, in the meantime, she observed that Colon had grabbed his chest and fallen to the "floor." The eyewitness acknowledged that she was contacted by the police nearly two years after the shooting, on June 19, 2007. On that date the eyewitness identified defendant as the shooter in a lineup.

The lineup was the second police attempt to have the eyewitness identify the shooter. Cross-examination revealed that, a few days after the shooting, the eyewitness went to a precinct house, whereupon police showed her a photo array. The eyewitness did not identify defendant's photograph in that array, and she explained that "in the pictures" defendant "looked

different" from how he appeared in person. The eyewitness stated that she declined to identify the shooter because she was "more comfortable seeing . . . the person in person because in the picture they looked different," and she was fearful of identifying the wrong person.

The People's case turned to the police investigation of the shooting and the testimony of the lead detective. The detective initially noted that the police did not make an arrest in 2005 or 2006. He then described an August 21, 2005 meeting he had with Colon's sister. Over defendant's general objection, the prosecutor engaged the detective in this exchange:

> "Q. And without telling us specifically what you talked about, . . . did [Colon's sister] assist you in your investigation of this case?
>
> "A. Yes, she did.
>
> "Q. And did she tell you whether [Colon] was having a problem with anyone in particular?
>
> "A. Yes, she did.
>
> "Q. Who was that?
>
> * * *
>
> "A. [Defendant]."

The detective further testified that Colon's sister had also told him that defendant and Colon had known each other for "quite awhile." Defendant objected that "[w]e don't have that witness here." The court overruled the objection. That

testimony preceded the detective's explanation of the police investigation of the shooting, which culminated in the arrest of defendant on June 19, 2007.

The People's case established that Colon was killed by a single gunshot. The People, however, had neither the gun at issue nor any physical evidence linking defendant to the shooting. Consequently, their case hinged on the eyewitness's identification of the shooter and the hearsay testimony of the detective as to the reported strife between Colon and defendant. At a charge conference the court denied defendant's motion seeking either the striking of the detective's testimony as to conflict between defendant and Colon or, in the alternative, the delivery of an instruction directing the jury to disregard that testimony on the ground that it was "pure hearsay." The jury convicted defendant of manslaughter in the first degree (Penal Law § 125.20 [1]).

On appeal, the Appellate Division declined to disturb the conviction, concluding, in relevant part, that defendant's objection to the disputed parts of the detective's testimony "did not preserve [defendant's] Confrontation Clause claim" and, in the alternative, that there was "no Confrontation Clause violation[] because the evidence was admissible for a legitimate purpose other than its truth" (113 AD3d 553, 554 [2014]). After acknowledging that the trial court should have given a limiting instruction with respect to the disputed testimony, the Appellate

Division also concluded that "any error in receiving the evidence or in failing to deliver [such an] instruction was harmless, because neither the evidence nor the absence of an instruction could have affected the verdict" (id.).  A Judge of this Court granted leave to appeal (22 NY3d 1198 [2014]).  We now reverse and order a new trial.

### *People v DeJesus*

During the early morning hours of June 9, 2006, Julio Montez was shot to death following a dispute outside a neighborhood bar.  Defendant was charged by indictment with one count of murder in the second degree (Penal Law § 125.25 [1]).

At pretrial motion in limine the People sought to introduce evidence that Montez's family had called the police 12 hours after the shooting to report their receipt of an anonymous phone call identifying the shooter as a person named "Joshua" who lived with his grandparents at a certain Manhattan address. According to the prosecutor, that information was relevant not for the truth of the matter asserted, but to show "why the police focused in on . . . defendant and how they came to put his photo in a photo array, how they came to show it to witnesses, [and how] defendant was a suspect from the day the actual homicide took place."  Following defendant's point that such evidence would be purely prejudicial, the court ruled that the prosecutor could ask, "based on your investigation on that day, did you have a suspect in mind," without mention of the subject phone call.

The matter subsequently proceeded to a jury trial where, similar to Garcia, the identification of defendant as the shooter was premised upon the testimony of a single eyewitness. In this case, that eyewitness, a longtime friend of Montez, testified as to having frequently seen defendant "hanging out" in the neighborhood in which Montez, the eyewitness, and defendant lived. He also saw defendant shoot Montez following the tavern quarrel. The shooting occurred at approximately 3:45 a.m. on June 9, 2006. The eyewitness called 911 for medical and police assistance. Montez died at a hospital approximately two hours later.

A police detective obtained a list of the telephone numbers that were used to call 911 concerning the shooting. Using the list, that detective contacted the eyewitness at about 4:50 a.m. on the morning of the shooting. At that point, the frightened eyewitness did not want to be "involved" in the matter. He told the detective that he did not see the shooting and made no mention of defendant's presence at the scene of that incident.

At least two more detectives became involved in the investigation of the shooting later that morning, and one of those detectives eventually interviewed the eyewitness at approximately 7:00 p.m. on the evening of that incident. At that juncture the eyewitness gave a physical description of the shooter and indicated that he could identify the shooter, whom he

recognized from the neighborhood.  Then, at approximately 10:00 p.m. that evening, the eyewitness was shown a photo array from which he identified defendant as the shooter.

The means by which the police identified defendant as a suspect are at the core of our inquiry here.  Over defendant's objection, the detective who conducted the 7:00 p.m. interview testified in this colloquy that he began to look for defendant at 4:00 p.m. on the afternoon of the shooting as a result of that detective's investigatory work and without having spoken to the eyewitness:

> "Q.  Did there come a time . . . on June 9th of 2006 that you were looking for a specific suspect relating to the shooting death of [Montez]?
>
> * * *
>
> "A.  Yes . . . ."
>
> "Q.  And what was the name of the person you were looking for?
>
> * * *
>
> "A.  [Defendant].
>
> * * *
>
> "Q.  And I may have asked you this: What time on June 9th did you begin specifically looking for a person by the name of [defendant]?
>
> * * *
>
> "A.  4:00 P.M.
>
> "Q.  And without telling us specifically, was that as a result of your investigation that you began looking for . .

. defendant . . .?

"A. Yes . . . .

"Q. And at the point that you had a specific suspect that you were looking for in connection with the shooting [death] of [Montez], had you spoken to [the eyewitness]?

"A. No . . . ."

Defendant later moved for a mistrial based on the foregoing testimony, contending that it violated his right to confrontation insofar as it amounted to an unsworn statement from an anonymous source identifying defendant as the shooter. The court ultimately denied the motion, and by then the jury had returned a verdict convicting defendant of murder in the second degree (Penal Law § 125.25 [1]).

The Appellate Division affirmed, concluding, inter alia, that the "brief, limited testimony that defendant was already a suspect at the time the [eye]witness was interviewed did not violate the Confrontation Clause" inasmuch as that "evidence was offered not for its truth, but for the legitimate nonhearsay purposes of[, inter alia,] completing the narrative, explaining police actions, providing the context of the [police] interview [of the eyewitness], . . . and preventing jury speculation" (105 AD3d 476, 476 [2013] [internal citation omitted]). A Judge of this Court granted leave to appeal (22 NY3d 1198 [2014]). We now affirm.

## *Analysis*

### I.

"Under the Sixth Amendment of the Federal Constitution and article I, § 6 of the State Constitution, a criminal defendant has the right to be confronted with the witnesses against him or her (see US Const Amend VI; NY Const, art I, § 6; Delaware v Van Arsdall, 475 US 673, 678 [1986]; People v Rawlins, 10 NY3d 136, 146 [2008])" (People v Smart, 23 NY3d 213, 219 [2014]).  Indeed, the federal Confrontation Clause bars "admission of testimonial statements of a witness who did not appear at trial," unless that witness was unavailable to testify and the defendant had a prior opportunity to cross-examine him or her (Crawford v Washington, 541 US 36, 53-54 [2004]; see People v Pealer, 20 NY3d 447, 453 [2013], cert denied ___ US ___, 134 S Ct 105 [2013]).  "[A] statement will be treated as testimonial only if it was 'procured with a primary purpose of creating an out-of-court substitute for trial testimony' " (id., quoting Michigan v Bryant, 562 US 344, ___, 131 S Ct 1143, 1155 [2011]) and, "[i]f a different purpose underlies its creation, the issue of admissibility of the statement is subject to federal or state rules of evidence" (Pealer, 20 NY3d at 453).  Our precedent teaches that "two factors . . . are 'especially important' in resolving whether to designate a statement as testimonial---'first, whether the statement was prepared in a manner resembling ex parte examination and second, whether the statement accuses defendant of criminal wrongdoing' " (id., quoting People v Rawlins, 10 NY3d 136, 156 [2008], cert denied sub nom Meekins v

New York, 557 US 934 [2009]).  "[T]he 'purpose of making or generating the statement, and the declarant's motive for doing so,' also 'inform [those] two interrelated touchstones' " (Pealer, 20 NY3d at 453, quoting Rawlins, 10 NY3d at 156).

But this is not to say that testimonial statements are invariably intolerable at trial.  The federal Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted" (Crawford, 541 US at 59 n 9, citing Tennessee v Street, 471 US 409, 414 [1985]).[1]  Moreover, subject to the exercise of a court's discretion, otherwise inadmissible evidence that "provide[s] background information as to how and why the police pursued and confronted [a] defendant" (People v Tosca, 98 NY2d 660, 661 [2002]) may be admitted to help a jury understand a case in context "if the evidence's probative value in explaining the [pursuit] outweighs any undue prejudice to the defendant," and if the evidence is accompanied by a " 'proper limiting instruction[]' " (People v Morris, 21 NY3d 588, 596 [2013], quoting People v Resek, 3 NY3d 385, 389 [2004]).  We now apply

---

[1]    Crawford interpreted the federal Confrontation Clause, but the federal and state Confrontation Clauses are "virtually identical" (People v Bradley, 8 NY3d 124, 126 [2006]).  The federal clause states that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him" (US Const Amend VI), while the state clause provides that "[i]n any trial in any court whatever the party accused shall . . . be confronted with the witnesses against him or her" (NY Const, art I, § 6).

those principles to the facts before us.

## II.

Garcia's contention with respect to the alleged violation of his confrontation rights is preserved for our review (see CPL 470.05 [2]), and it has merit.[2]  In Garcia, the detective's testimony as to his conversation with Colon's sister went beyond the permissible bounds of "provid[ing] background information as to how and why the police pursued . . . defendant" (Tosca, 98 NY2d at 661).  The detective's remark that Colon's sister had said that there was friction between defendant and Colon indisputably was a testimonial statement inasmuch as it was procured for the primary purpose of creating an out-of-court substitute for the testimony of Colon's sister regarding that discord (see generally Pealer, 20 NY3d at 453).  The testimony as to that friction, which arguably gave a motive for the shooting, exceeded that which was necessary to explain the police pursuit of defendant.  It should not have been countenanced by the trial court.  Inasmuch as Garcia turned on the identification of defendant by a single eyewitness, who was not well-acquainted with defendant and who did not identify him until two years after the crime, we cannot conclude that the error in admitting that testimony in evidence is harmless (see generally People v

_____

[2]     We note that, even if defendant's constitutional contention is unpreserved, as the People suggest, we would reach the same result with respect to the merits based on our state evidentiary hearsay rules.

Eastman, 85 NY2d 265, 277-278 [1995]; cf. People v Kello, 96 NY2d
740, 744 [2011]).

Even assuming, arguendo, the detective's statements as
to the discord between defendant and Colon merely provided
background as to the police pursuit of defendant and were
properly admitted in evidence for that purpose, reversal would
still be required.  It is obvious, if not uncontested, that the
subject testimony should have been tempered by a " 'a proper
limiting instruction[]' " (Morris, 21 NY3d at 596, quoting Resek,
3 NY3d at 389).  In the absence of a curative instruction the
prosecutor offered what we characterize here as a curative
argument on summation.  Specifically, the prosecutor contended
that the detective's testimony as to what Colon's sister had said
that Colon had told her was not "introduced for the truth of the
matter asserted."  That argument, however, is no substitute for a
proper curative or limiting charge inasmuch as " '[a]rguments of
counsel cannot substitute for instructions by the court' "
(Carter v Kentucky, 450 US 288, 304 [1981], quoting Taylor v
Kentucky, 436 US 478, 489 [1978]).

In any event, under the circumstances of this case, the
failure to temper that testimonial evidence with a proper
curative instruction is not harmless even under the standard
applicable to non-constitutional harmless error (see generally

People v Crimmins, 36 NY2d 230, 241-242 [1975]).[3]

### III.

People v DeJesus presents different circumstances. There, when asked whether there came a time on June 9, 2006 when the police began to look for a specific suspect in relation to the death of Montez, the subject detective merely agreed that the police "beg[a]n specifically looking for [defendant]" at 4:00 p.m. that afternoon without having "spoken to [the eyewitness]." There is no basis to characterize that statement as testimonial---it simply is not an out-of-court substitute for trial testimony (see Pealer, 20 NY3d at 453). We thus conclude that there is no merit to defendant's contention that his confrontation rights were violated.[4]

Further, we conclude that DeJesus is not a case in which there was an inferential breach of defendant's confrontation rights. The United States Court of Appeals for the Second Circuit has ruled that "[t]he relevant question [in determining whether testimony contains an implicit accusation and thus is testimonial] is whether the way the prosecutor solicited the testimony made the source and content of the conversation

---

[3]    Garcia also contends that the evidence is legally insufficient to support his conviction, but that contention is not preserved for our review (see People v Gray, 86 NY2d 10, 19 [1995]).

[4]    In so concluding, we note that, as we read the record and his main brief, defendant articulated on appeal contentions with respect to both the federal and state Confrontation Clauses that are preserved for our review (see CPL 470.05 [2]).

clear" (Ryan v Miller, 303 F3d 231, 250 [2d Cir 2002]; see United States v Dukagjini, 326 F3d 45, 56-57 [2d Cir 2003]).  Even assuming, arguendo, that the Ryan litmus test applies here, we conclude that there was no violation of defendant's confrontation rights.  Defense counsel's point at trial that the disputed testimony gave the "clear implication" that "some unknown anonymous caller said that [defendant] must have been the suspect" is mere supposition.  Moreover, defendant's reiteration on appeal of his point at trial that the subject evidence "clearly stands for the proposition [that] somebody told [the detective] to look for [defendant] because [defendant] was the shooter before someone spoke to [the eyewitness]" is similarly misplaced.

Accordingly, the order of the Appellate Division in People v Garcia should be reversed and a new trial ordered, and the order of the Appellate Division in People v DeJesus should be affirmed.

People v Garcia

No. 40




PIGOTT, J. (concurring) :

I disagree with my colleagues in People v Garcia to the extent that they hold that the trial court erred, as a matter of law, in admitting the detective's testimony regarding his conversation with Colon's sister.

The detective's testimony, which did not go into any of the specific details of his conversation with Ms. Colon, was necessary to explain to the jury how the detective came to focus on defendant during his nearly two-year investigation (see People v Till, 87 NY2d 835, 837 [1995]). Under certain circumstances, and when coupled with proper limiting instructions, testimony of this kind may fill in gaps of "interwoven events" (id.) and thus, help the jury understand the case in context.

Without the detective's very brief testimony of Ms. Colon's account that there was a "problem" between defendant and Mr. Colon, there would have been no explanation for why the detective included defendant in the initial photo array or spent two years looking for him.  The jury would have been left to speculate over an obvious gap in the narrative.

I agree, as both defense counsel and the prosecutor requested, that a limiting instruction should have been given to

- 1 -

explain the testimony's limited purpose.  As my colleagues

recognize, the testimony arguably suggested to the jury a motive

for the shooting and the court's failure to give that limiting

instruction was not harmless.

*   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

For Case No. 40:  Order reversed and a new trial ordered.
Opinion by Judge Fahey.  Chief Judge Lippman and Judges Rivera,
Abdus-Salaam and Stein concur.  Judge Pigott concurs in result in
a separate opinion in which Judge Read concurs.

For Case No. 41:  Order affirmed.  Opinion by Judge Fahey.  Chief
Judge Lippman and Judges Read, Pigott, Rivera, Abdus-Salaam and
Stein concur.


Decided March 31, 2015