People v Bacon (2025 NY Slip Op 03692)

People v Bacon

2025 NY Slip Op 03692

Decided on June 18, 2025

Court of Appeals

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on June 18, 2025

No. 60 

[*1]The People & c., Respondent,
v
Zavearr Bacon, Appellant.

Samir Deger-Sen, for appellant.
Julia Gorski, for respondent.

MEMORANDUM:
The order of the Appellate Division should be affirmed.
Defendant failed to preserve his claim that his constitutional right to confront the witnesses against him at trial was violated.
At defendant's trial for robbery and assault of two victims, the prosecution called two police officers who testified about statements made by the victims at the scene of the crime. As relevant here, the officers testified about the identities and physical descriptions of the assailants provided by one of the victims while she was in an ambulance being treated for her injuries. Defendant's only contemporaneous objection to this testimony raised a (sustained) double hearsay objection when an officer related statements made by one victim to the other. Although the victims were expected to testify at trial, neither did.
At the close of the People's case, defendant moved for a trial order of dismissal based on insufficient proof. Counsel argued that "since we do not have the complainants . . . the jury is left with a wrong impression as to the physical and mental condition of [the female victim] at the time of the incident. There was no ability to cross-examine or even on direct examination for the jury to understand that . . . she had taken her usual dose of [*2]Methadone." The court responded by asking whether "the question before the court is, based upon the evidence that they did put in — whether it was lousy or not lousy or whatever it was — is it sufficient to go forward." Defense counsel confirmed the court's understanding and explicitly noted the standard applicable to claims of legal insufficiency.
Under CPL 470.05, a question of law is preserved for appellate review where a protest to the alleged error is raised in the trial court at a time when the court had an opportunity to correct it, or where the court expressly decides the question raised on appeal in response to a party's protest. Defendant did not raise the constitutional challenge he now presses before this Court, nor did the court rule on the constitutional question (see People v Cabrera, 41 NY3d 35, 42-43 [2023]).
Defendant's motion at the close of the People's case did not invoke the Confrontation Clause and the colloquy that took place between defense counsel and the court makes clear that the motion to dismiss was neither intended nor understood to raise a constitutional issue[FN*]. Moreover, counsel did not invoke or rely on any caselaw dealing with constitutional protections. Instead, counsel made evidentiary arguments regarding the persuasive quality of the prosecution's proof and, when asked by the court, confirmed that the motion was limited to the sufficiency of the evidence. Further, the timing of defendant's motion at the close of the People's case—which defense counsel specifically referred to as "a trial order of dismissal" (see CPL 290.10 [providing that such motions shall be directed to the sufficiency of the evidence])—suggests that defendant's aim was not to challenge testimony of the victim's statements as violative of his right to confrontation, but simply as failing to meet the evidentiary bar for a prima facie case (cf. People v Garcia, 25 NY3d 77, 81-82 [2015]). Additionally, counsel repeatedly told the court that his motion was "focus[ed]" on the third-degree robbery charge, demonstrating that the argument was a legal insufficiency one, rather than a Confrontation Clause challenge, which would necessarily apply to all charges with equal force. Contrary to defendant's argument, the mere reference to a lack of cross-examination was insufficient to alert the court that defendant was making a constitutional argument (see People v Kello, 96 NY2d 740, 743-744 [2001]).
We have reviewed defendant's remaining arguments and find them to be without merit.

RIVERA, J. (dissenting):

The prosecution repeatedly stated to the jury and defense counsel that the two victims in this assault and robbery trial would testify. They never did. But their out-of-court testimonial statements to the police describing and naming the perpetrators were admitted when the officers repeated those statements to the jury during the prosecution's case-in-chief. The victims made these testimonial statements after the perpetrators fled and after the police moved them to safety and placed them under the care of emergency personnel. The police elicited the statements through questioning, for investigatory purposes, after any emergency had subsided. Admission of these testimonial statements by non-declarants for the truth of the matter asserted was a textbook violation of defendant's rights under the Confrontation Clause to confront and cross-examine his accusers (see US Const 6th Amend). Because the victims' statements describing and naming the perpetrators were the only evidence connecting defendant to the crime, their admission was prejudicial and therefore requires reversal and a new trial.
When the prosecution suddenly announced, moments before the close of their case at trial, that they would not call the victims to testify, defendant voiced his opposition. He asserted to the court that the prosecution rested without calling the victims and "[t]here was no ability to cross-examine." Defendant's assertion was more than adequate to preserve his challenge to the admission of the victims' statements as a violation of the Sixth Amendment Confrontation Clause. It was certainly more adequate than saying "[w]e don't have that witness here"—a statement we have previously found sufficient to preserve a Confrontation Clause challenge (People v Garcia, 25 NY3d 77, 82 [2015] [internal quotation marks omitted]). Contrary to the majority's view, that defendant also moved to dismiss on the alternative ground that the prosecution's case was legally insufficient, and that defense counsel responded to the trial court's inquiry on that issue, does not change the fact that defendant advised the court that his accusers' statements were presented to the jury without an opportunity to cross-examine the speakers. I dissent.
I.
Defendant Zavearr Bacon was indicted on various charges stemming from an assault on two individuals at a subway station in Manhattan. Defendant and codefendant Carlos Garcia were tried on various counts of robbery in the third degree, assault in the third degree, and petit larceny.[FN1] According to the trial evidence, four people, including one of the victims, A.V., called 911 from the subway station between 3:18 p.m. and 3:25 p.m. Two police officers, responding to a report of an assault in progress, arrived approximately seven minutes after the first call and found the other victim, P.I., just past the turnstiles. P.I. told the officers that his wife was downstairs on the platform, where the officers then found A.V. bleeding from her nose and mouth. She yelled that the assailant was on the tracks and had broken her phone and punched her in the face. The officers testified that they saw a person running on the tracks, but the figure was too far for them "to make anything out" before the person "disappeared."
The officers then exited the subway with the victims to "gather some more information about the incident" and "get [A.V.] medical attention." An ambulance arrived, and EMTs tended to A.V., who, according to one of the officers, "seemed to be fading out, falling asleep, as if she was under the influence of some sort of drug or alcohol."
"After [A.V. and P.I.] were meeting with the EMTs," the officers questioned A.V. about the incident and "took a report," asking "for detailed description[s] of the suspects." The officers testified that the victims were approached on the street by two men and that "Zebo" punched A.V. in the face, took her cell phone and ran into the subway station. P.I. told the officers that he was arguing with the perpetrators, whom he identified as Carlos and Zebo, when they assaulted him. He provided a general physical description of Zebo and what he was wearing. Both victims were then taken to the hospital.
The prosecutor repeatedly represented during the trial that the victims would testify. The prosecutor stated as much during jury selection, and in her opening remarks she told the jury that the victims would "explain th[is] all to you." Then, at the end of the first day of trial, she informed the court that "[t]omorrow [she] anticipate[d] calling both complaining witnesses." Based on these representations, defense counsel commented on the anticipated testimony. Specifically, he stated that A.V. would testify that her prescribed medication, Klonopin, "makes her a little loopy" and "she can't remember facts."
Neither victim testified. However, the responding officers testified to what the victims told them. And a recording of A.V.'s 911 call was also played for the jury and admitted as evidence.
On the day before the People rested, the prosecutor informed the court that "the only two remaining witnesses will be the victims, who [she] anticipate[d] calling tomorrow morning." The following morning, the prosecutor called two witnesses from the district attorney's office. The assistant district attorney who initially handled the case testified that she met with the victims twice within a few weeks after the incident and observed bruising around one of P.I.'s eyes and his nose. She further testified that he brought her a box with a broken piece of the cell phone inside. A trial preparation assistant testified that she witnessed the prosecutor hand a trial subpoena to both victims. The prosecutor then stated that "[t]here are no additional witnesses," and shortly thereafter announced that the People rested.
Defendant immediately moved to dismiss the indictment, asserting that the prosecution's evidence was insufficient and that he did not have an opportunity to cross-examine A.V.:
"[COUNSEL]: I move at this time for a trial order of dismissal of the indictment as to all charges. I'm going to focus specifically on the [r]obbery in the [t]hird [d]egree charge. I would argue that the People have offered no proof as to the defendant['s] . . . participation in causing the phone to break, and under what circumstances to advance the People's theory that it was a robbery caused by [defendant].
"In addition to that, since we do not have the complainants, the People have rested without the complainants, and the jury is left with a wrong impression as to the physical and mental condition of [A.V.] at the time of the incident. There was no ability to cross-examine or even on direct examination for the jury to understand that, according to her grand jury testimony, she had taken her usual dose of Methadone. In addition, she's prescribed two milligrams of Klonopin twice a day; and in the grand jury she did testify under oath that that particular day she had taken four milligrams, and when she takes four milligrams, the grand jury testimony is that she becomes, quote: Loopy, forgetful, she drops things.
. . . .
"Because she testified that if she takes four milligrams she tends to forget what happens. If she takes more, she totally blacks out and . . . I would have liked to know under oath how much she took. Was it more than she admitted? The four milligrams?" (emphasis added).
Then the court inquired about counsel's insufficiency argument:
"THE COURT: But the question before the [c]ourt is, based upon the evidence that [the People] did put in—whether it was lousy or not lousy or whatever it was—is it sufficient to go forward. Anything further on that?"
After explaining in detail counsel's view of the deficiency in the prosecution's evidence as to the third-degree robbery count, counsel summarized the issue as follows:
"[COUNSEL]: I'm . . . focusing mainly on the robbery . . . charge . . . [and] also encompassing all the other misdemeanor assault charges, petit larceny as well.
"So if Your Honor is asking me as to the [r]obbery in the [t]hird [d]egree and why the People have not made out a prima facie case, that's my argument, that there's no other witness that would be able to testify as to those circumstances admittedly other than [A.V.]."
Codefendant moved for dismissal solely on the ground of insufficiency. After the prosecutor argued in opposition to dismissal, the court reserved judgment and later denied the motion after the verdict.
The jury convicted defendant on one count of third-degree robbery and two counts of third-degree assault. The court sentenced defendant to two to six years' incarceration.
The Appellate Division affirmed, concluding, as relevant here, that defendant did not preserve his Confrontation Clause challenge to the victims' out-of-court statements, and, in the alternative, the claim was meritless (see 220 AD3d 450, 450-451 [1st Dept 2023]). Citing caselaw that statements provided to assist police with an ongoing emergency are not testimonial, the Appellate Division concluded that the victims' statements "were elicited for the primary purpose of addressing the immediately dangerous situation and obtaining prompt assistance for the [victims] and therefore were nontestimonial" (id. at 451).
Defendant is correct that the victims' statements were testimonial because there was no ongoing emergency when the officers made their inquiries. Instead, the police sought the victims' statements for purpose of compiling information about a past event for future prosecution. Admission of the statements violated the Confrontation Clause. The error was not harmless, as the statements were the only evidence inculpating defendant in the crimes. Defendant's conviction should be reversed and vacated, and a new trial ordered.[FN2]
II.
A.
The Sixth Amendment of the Federal Constitution provides a criminal defendant the right "to be confronted with the witnesses against [them]" (US Const 6th Amend), meaning "those who bear testimony . . . for the purpose of establishing or proving some fact" (Crawford v Washington, 541 US 36, 51 [2004] [internal quotation marks and citation omitted]). "This bedrock procedural guarantee applies to both federal and state prosecutions" (id. at 42, citing Pointer v Texas, 380 US 400, 406 [1965]). In Crawford, the United States Supreme Court explained that "the principal evil at which the Confrontation Clause was directed was the civil-law mode of criminal procedure, and particularly its use of ex parte examinations as evidence against the accused" (id. at 50). "[T]he basic objective of the Confrontation Clause . . . is to prevent the accused from being deprived of the opportunity to cross-examine the declarant about statements taken for use at trial" (Michigan v Bryant, 562 US 344, 358 [2011]).
Out-of-court testimonial statements are admissible under the Confrontation Clause only when the declarant is "unavailable to testify, and the defendant had had a prior opportunity for cross-examination" (Crawford, 541 US at 54). As relevant to this appeal, in the context of police interrogation, a declarant's statements are nontestimonial, and thus admissible under the Confrontation Clause, when made "under circumstances objectively indicating that the [*3]primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency" (Davis v Washington, 547 US 813, 822 [2006]). By contrast, the declarant's statements are "testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to a later criminal prosecution" (id.). To determine whether out-of-court statements are testimonial for purpose of the Confrontation Clause, courts must consider "whether, in light of all the circumstances, viewed objectively, the 'primary purpose' of the conversation was to "creat[e] an out-of-court substitute for trial testimony' " (Ohio v Clark, 576 US 237, 245 [2015], quoting Bryant, 562 US at 358; see People v Franklin, 42 NY3d 157, 162 [2024], cert denied 604 US — [2025]). Relevant factors include any ongoing threat to the victim or the general public, including the assailant's use of weapons (see Bryant, 562 US at 363-365); the timing (see Davis, 547 US at 830) and location of the interrogation (see Bryant, 562 US at 360, 366); the victim's medical condition and the presence of emergency medical services (see id. at 365-366); and indicia of formality, including whether the interrogation resulted in a written document (see id. at 366; Davis, 547 US at 826-827). "[T]he existence of an 'ongoing emergency' at the time of an encounter between an individual and the police is among the most important circumstances informing the 'primary purpose' of an interrogation . . . because an ongoing emergency focuses the participants on something other than 'prov[ing] past events potentially relevant to later criminal prosecution' " (Bryant, 562 US at 361 [citations omitted]). Instead, "it focuses them on 'end[ing] a threatening situation' " (id. [citation omitted]).
Errors are generally subject to our harmlessness analysis (see generally People v Crimmins, 36 NY2d 230 [1975]). However, " 'unless the proof of the defendant's guilt, without reference to the error, is overwhelming, there is no occasion for consideration of any doctrine of harmless error' " (People v Mosley, 41 NY3d 640, 652-653 [2024], quoting People v Mairena, 34 NY3d 473, 484-485 [2019] [internal quotation marks omitted], quoting Crimmins, 36 NY2d at 241). If the evidence is overwhelming, then the court proceeds to determine whether the error is constitutional or nonconstitutional in nature (see Crimmins, 36 NY2d at 239-240). Where the error is constitutional—as is the case here, where defendant's confrontation rights have been violated—reversal and a new trial are required unless the error "was harmless beyond a reasonable doubt" (People v Ortega, 40 NY3d 463, 478 [2023], citing Crimmins, 36 NY2d at 237). Put another way, the Court must reverse unless "there is no reasonable possibility that the error might have contributed to defendant's conviction" (Crimmins, 36 NY2d at 237).
B.
The victims' statements admitted at trial were testimonial, as the police elicited them for the primary purpose of recording the complaint of a crime for investigation and possible future prosecution. The officers asked questions regarding the events and the description of the perpetrators, which the officers described as taking "a report." Based on the victims' accounts, the officer responsible for paperwork that day filled out a "complaint report" for the incident, to which he referred throughout trial. The officer testified that "[w]hatever is given to us in the moment, that's what we write down," and "the purpose . . . is to gather as much information [as possible] on a crime or event where there is a victim" and "basically, classify the incident." As the officer further explained, when a suspect is no longer present at the scene and no arrests have been made, the information collected "gets entered into the computer and then assigned to a detective." That is what happened here, where the police "[a]sked [the victims] for [a] detailed description of the suspects" and a narrative of the events leading to the assault, and then archived the responses for future reference. As the Supreme Court has explained, "[t]he product of such interrogation, whether reduced to a writing signed by the declarant or," as here, "embedded in the memory (and perhaps notes) of the interrogating office, is testimonial" (Davis, 547 US at 826). Therefore, "in light of all the circumstances, viewed objectively, the primary purpose of the conversation was to create an out-of-court substitute for trial testimony" (Clark, 576 US at 245 [internal quotation marks, brackets, and citation omitted]).
Contrary to the prosecution's claim, there was no ongoing emergency when the police officers asked the victims about the crime and the perpetrators, and thus no legal exception to the commands of the Confrontation Clause. First, as the officers testified, they observed an alleged assailant running away from the scene through a tunnel. The officers did not see either perpetrator in or outside the subway station. Thus, the perpetrators were no longer an immediate threat to the victims. The prosecution concedes the same. And the victims' "statements 'were [*4]neither a cry for help nor the provision of information enabling officers immediately to end a threatening situation,' " making their statements testimonial (Bryant, 562 US at 357, quoting Davis, 547 US at 832). Second, there was no evidence that the perpetrators were armed or otherwise posed a broader public safety threat. Neither victim mentioned the use of a weapon during the physical assault, and A.V. stated only that she was punched in the face once. The officers did not recover a weapon or observe any signs of the use of a weapon on the platform or the street. The prosecution never argued that the perpetrators brandished a weapon, and defendant was charged with and convicted of third-degree robbery for committing a felony without the use of a weapon (see Penal Law § 160.05). Third, the officers did not testify that they sought the information from the victims out of a sense of urgency, and for the primary purpose of addressing an ongoing emergency. The officers testified instead that they sought to obtain a complete understanding of the incident and a detailed description of the suspects in order to create a complaint report that would be passed on to a detective. Fourth, the police took the challenged statements several minutes after the crime, while the victims were on the street, away from the scene, and while they were under police protection and treated by emergency personnel. These surrounding circumstances establish, in accordance with Supreme Court caselaw and the factors set forth in Bryant, that the officers were engaged in the routine gathering of information about a past crime rather than a response effort to mitigate an ongoing emergency. In other words, "the primary purpose of the interrogation [was] to establish or prove past events potentially relevant to a later criminal prosecution" (Davis, 547 US at 822).
Excising the erroneously admitted statements, the evidence against defendant was not overwhelming. There was no physical proof connecting him to the crime, and the only inculpatory evidence was the victims' statements describing the perpetrators. Without those statements there was absolutely no evidence before the jury that defendant was one of the perpetrators. That ends the analysis (see Crimmins, 36 NY2d at 240-241).
In sum, the record establishes that the officers elicited the victims' statements for investigatory purposes for future prosecution and not because there was an ongoing emergency at the subway station or nearby. The remedy for this constitutional error is reversal and a new trial (see Mosley, 41 NY3d at 652-653).
III.
Defendant preserved his Confrontation Clause challenge. A defendant preserves a claim for appellate review when they make their position "known to the court" (CPL 470.05 [2]; see People v Sanders, 39 NY3d 216, 220 n [2023]).
Here, defendant made his position known and thus put the trial court on notice of the constitutional error when he stated that "the People have rested without the complainants" and "[t]here was no ability to cross-examine." That assertion describes a quintessential Confrontation Clause violation—admission of an out-of-court statement for its truth from a nontestifying witness (see Hemphill v New York, 595 US 140, 145-147, 153 [2022]). Although the majority characterizes defendant's motion as "contain[ing] some ambiguity" (majority op at 3 n 1), there could be no purpose to defendant's objection other than to alert the court to this particular constitutional error because the opportunity to cross-examine a defendant's accuser is at the heart of the Confrontation Clause. Indeed, where testimonial statements are admitted against a defendant without the opportunity for cross-examination, "[t]hat alone is sufficient to make out a violation of the Sixth Amendment" (Crawford, 541 US at 68).
Contrary to the majority's suggestion, a defendant need not expressly "invoke the Confrontation Clause" to preserve their constitutional claim (majority op at 3). We have never required a defendant to articulate any such "magic" words, and there is no talismanic recitation required for preservation. A defendant need only put the grounds for the objection on the record. That was all that we required in People v Garcia, where the defendant objected on Confrontation Clause grounds by saying "[w]e don't have that witness here" (25 NY3d at 82 [internal quotation marks omitted]). Defendant's objection to the Confrontation Clause violation here was more expansive and detailed, as he specifically stated both that he was denied an opportunity to cross-examine the victims and that he was prejudiced because he could not explore and present to the jury the A.V.'s physical and medical condition—and that her medication left her "loopy"—at the time of the assault.
The majority fails to distinguish Garcia, relegating it to a cf. citation in support of a sweeping proposition found nowhere in our holding, and adopts a view that is contrary to the record and reason (see majority op at 3). The majority asserts that the timing of defendant's motion "suggests that defendant's aim was not to challenge testimony of the victim's statements as violative of his right to confrontation, but simply as failing to meet the evidentiary bar for a prima facie case" (id.). The record belies this narrow interpretation of defendant's argument. The colloquy establishes that defendant clearly raised both challenges: lack of confrontation and insufficiency. Defendant argued that the prosecution "offered no proof" of defendant's guilt and, "[i]n addition," he had no ability to cross-examine A.V. Defendant's assertion of alternative grounds for dismissal does not evince abandonment of his Confrontation Clause challenge. Indeed, if he had not raised both, defendant would have failed to preserve each asserted claim. Instead, in accordance with our preservation rules, defendant asserted his Confrontation Clause and sufficiency claims at the end of the prosecution's case, when the prosecutor rested without calling the victims (see CPL 470.05 [2]; People v Jackson, 29 NY3d 18, 22 [2017]). That was enough.
The majority's reasoning is not only at odds with the record, but it is fundamentally illogical. If, as the majority speculates, defendant was objecting solely on sufficiency grounds, there would have been no reason for him to assert his lack of opportunity to cross-examine a vital prosecution witness. Why would defendant complain that he was unable to question an absent witness's credibility if his argument was that the evidence admitted was insufficient? In support of his motion to dismiss, counsel had every reason to discuss the asserted deficiencies of the prosecutor's case-in-chief; however, he had no reason to complain about a lost opportunity to further diminish evidence he claimed was already insufficient.
The majority's observation that defendant sought a trial order of dismissal is no more persuasive (see majority op at 3). Counsel could have rightly concluded that dismissal of the indictment on all charges, rather than an order striking the testimony or declaring a mistrial, was preferable. Dismissal would have ensured the end of the prosecution and avoided another trial, or avoided the risk that the jury here would not be able to ignore the officers' recitation of the victims' statements. Counsel's strategic choices do not support the majority's conclusion that counsel either never objected on confrontation grounds or abandoned the argument.
The majority also misconstrues the context of defendant's statements about the "focus" of his motion (see id.). Defendant stated that his sufficiency challenge would "focus specifically on [r]obbery in the [t]hird [d]egree." Then, in response to the court's inquiry as to that argument, defendant again stated that he was "focus[ed] mainly on the robbery" charge. Defendant was not required to reassert his confrontation challenge in response to the court's inquiry about his sufficiency challenge, and his decision not to do so did not constitute abandonment of his confrontation challenge.
Lastly, because the court did not explain on the record the basis for its denial of defendant's objections, it is not obvious—as the majority assumes (see id.)—that the court did not understand that defendant raised a constitutional issue. The assumption appears to be based on the court's inquiry regarding counsel's sufficiency argument. But the court may very well have focused on that ground for further explanation given that the Confrontation Clause claim was obvious on its face and required no further argument. Even assuming the court did not recognize the constitutional violation caused by the prosecutor's failure to call the victims and the resultant deprivation of defendant's opportunity to cross-examine those witnesses, that would not render defendant's claim unpreserved. Our law is clear that a defendant need only present the argument to preserve it for appellate review. Defendant did that here. The majority has imposed a new preservation hurdle on defendants: to confirm that the court understood what they meant when they objected. But how is a defendant to know that alerting a court to a lost opportunity to cross-examine is not enough to preserve a Confrontation Clause claim if the court never asks a question about that ground and never explains its ruling? Moreover, during a trial, counsel and the trial judge are focused on multiple issues, often simultaneously. It is not unusual for a court, as here, to delay decision on a motion, including after verdict, and to deny the objection without explanation. The majority's new interpretation of preservation is simply unprecedented and unworkable. Here, whether the court failed to understand the argument or erroneously rejected it, the outcome is the same: defendant asserted an objection that the court denied without specifying its reasons, and the jury decided his guilt on evidence that included erroneously admitted statements in violation of his constitutional right to confront his accusers.
[*5]IV.
After the perpetrators had escaped and the victims were removed from the scene of the crime and treated by emergency personnel, the police questioned them. The officers testified that the questions were intended to provide a description of the perpetrators and the events leading to the crime. The officers made no mention of an ongoing emergency or public safety concerns as the basis for this questioning. Instead, the record establishes that the police interrogation of the two victims was intended to obtain information regarding a past and completed crime that they then used for future investigation and served as the basis for defendant's prosecution. Those statements are thus testimonial and not subject to the ongoing emergency exception to the Confrontation Clause. It was constitutional error to admit those statements—the only evidence inculpating defendant in the crimes charged.
Defendant preserved his challenge by objecting that the prosecutor did not call the victims and that he was denied the opportunity to cross-examine and test the credibility of the female victim's identification of defendant as one of the perpetrators. The majority's contrary conclusion is a distorted view of the record and our caselaw. I dissent and would not let stand this clear constitutional violation of defendant's right to confront his accusers.
Order affirmed, in a memorandum. Judges Garcia, Singas, Cannataro and Halligan concur. Judge Rivera dissents in an opinion, in which Chief Judge Wilson and Judge Troutman concur.
Decided June 18, 2025

Footnotes

Footnote *: We are not creating any "new preservation hurdle" (dissenting op at 16). Even if counsel's initial motion contained some ambiguity, once the trial court inquired whether the "question before the Court" was one of legal sufficiency and defense counsel confirmed the court's understanding was correct, the motion was limited to the argument adopted by counsel.

Footnote 1: Codefendant was acquitted of all charges.

Footnote 2: Given that I would resolve this appeal in defendant's favor based on the Confrontation Clause violation, I have no occasion to opine on defendant's alternative claim that the court erroneously denied his for-cause challenge to a prospective juror based on their alleged bias.